THE STATE *ex rel.* ARMOUR PACKING COMPANY v. STEPHENS *et al.*

In Banc, December 13, 1898.

1. **Corporation : PLACE OF BUSINESS: CERTIORARI.** In an original proceeding by *certiorari*, to quash the assessment by the State Board of Equalization of the cars of a corporation, if the petition states that the *situs* of the property is in another State, and such allegation is not denied in the return, it will be taken as true.

   *Held*, by WILLIAMS, J. (GANTT, C. J., BURGESS and BRACE, JJ., concurring), that the court can not look beyond the return of said board for the *situs* of the property.

2. ——: ——: **TAXATION.** A corporation, organized under the laws of New Jersey, whose place of business is in Kansas, whose cars are attached to its business as an incident thereto, and are loaded in Kansas and shipped into and through the State of Missouri, has acquired a domicile in the State of Kansas, and its cars can be taxed only in that State.

State ex rel. v. Stephens.

3. ———: ———: ———: CARS IN TRANSITU. Cars of a packing company, having no *situs* in this State, which are in Missouri only *in transitu*, are instruments of interstate commerce, and are not subject to assessment and taxation in this State.

4. Taxation: CARS IN TRANSITU: PROPERTY TAX: EXCESSIVE: ACT OF 1895. The act of March 18, 1895, providing for a state tax of two per cent in lieu of all other taxes, on "railway cars other than those which are the property of railway companies," imposes a property tax, and the tax imposed being in excess of the constitutional limit, the act is void. And this is true although the total tax thereby required for state purposes may not exceed the total taxation allowed by the Constitution for state, county, city and school purposes.

5. ———: UNCONSTITUTIONAL ACT: VOID IN TOTO. Said act being a whole scheme for the taxation of certain kinds of property, and the rate fixed and the method to be employed for its collection being inseparably welded together, the whole of the act is void, and the entire assessment must be quashed.

*Held*, by WILLIAMS, J., in separate opinion (GANTT, C. J., BURGESS and BRACE, JJ., concurring), that the section of the act levying a tax of two per cent for State purposes, is unconstitutional; but the whole Act is not necessarily void, because this section is invalid.

*Certiorari.*

RECORD OF BOARD OF EQUALIZATION QUASHED.

*Edward C. Wright* and *Frank Hagerman* for relator.

(1) The law violates section 8, article X, of the Constitution, because the tax exceeds the limit therein fixed. *Brookfield v. Toocy*, 141 Mo. 619; *Arnold v. Hawkins*, 95 Mo. 569; *Black v. McGonigle*, 103 Mo. 192. (2) If this law be declared to create a tax on property as distinguished from the use thereof, it is void because the property is not taxed in proportion to its value, as required by section 4, article X, of the Constitution. *Life Ass'n v. Board*, 49 Mo. 512; *State v. Railroad*, 75 Mo. 208; *Board v. Railroad*, 59 Ala. 551. (3) The tax authorized is clearly illegal because it covers property having no *situs* in the State. Relator

has a packing house in Kansas; it has specially constructed cars in which to transport its own products from its packing house to the consumer in other States, who buys from it; it does business for no one else; it carries products for no one except for itself; it has a customer in Chicago who orders a car load of meat; the meat is loaded into relator's car in Kansas, there placed in a train for through shipment to the consumer at Chicago; it passes through the State of Missouri. That use is counted under the provisions of this law for the imposition of a tax upon property. There is no difference in that case in principle between taxing the freight that is in that car and the car itself. The use is merely transitory and in no way pertains to business in the State; yet, under the law, the use is counted, for the statute gives no way by which such business may by the board be distinguished from a use strictly within the State. *Fargo v. Michigan*, 121 U. S. 230; *Bain v. Richardson*, 105 N. C. 362; 2 Elliott on Railroads, sec. 755; *People ex rel. v. Wemple*, 131 N. Y. 64; *People ex rel. v. Wemple*, 138 N. Y. 1; *Railroad v. Pennsylvania*, 15 Wall. 232.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for respondents.

(1) Relator claims this is not a property tax, it is not a direct tax on the cars as such. We think it is in the nature of an excise tax for the right to have the corporate capacity to do business in this State, and not a tax on the privilege or franchise, which, when incorporated, the relator may exercise. *Home Ins. Co. v. N. Y.*, 134 U. S. 599; *Maine v. Railroad*, 142 U. S. 217; Cooley on Taxation, p. 5. (2) A tax may be imposed on a corporation on account of its property within the State and may take the form of a tax for the

privilege of exercising its franchise within the State if the ascertainment of the amount is made dependent in fact on the value of its property situated within the State and if payment be not made a condition precedent to the right to carry on the business. *Railroad v. Pennsylvania*, 158 U. S. 438; *Maine v. Railroad*, 142 U. S. 217; *Postal Cable Co. v. Adams*, 155 U. S. 688; *Postal Cable Co. v. Adams*, 14 So. Rep. 36; *Seibert v. Pacific Express Co.*, 14 U. S. 339; *Adams Express Co. v. Ohio State Auditor*, 165 U. S. 194. (3) This law does not operate directly to exercise or assert control over interstate commerce and is therefore valid. *Seibert v. Pacific Express Co.*, 142 U. S. 339; *Maine v. Railroad*, 142 U. S. 217; *Postal Telegraph Co. v. Adams*, 155 U. S. 688; *Railroad v. Pennsylvania*, 158 U. S. 438. (4) The tax in this case is in the nature of an excise tax upon the relator, and that a tax of this character is within the power of a State to levy there can be no question. *Maine v. Railroad*, 142 U. S. 217; *Postal Telegraph Co. v. Adams*, 155 U. S. 688; *Seibert v. Pacific Express Co.*, 142 U. S. 339; *Poeple ex rel. v. Wemple*, 131 N. Y. 64; *People ex rel. v. Wemple*, 138 N. Y. 11; *Home Ins. Co. v. New York State*, 134 U. S. 594. (5) The act imposes an excise tax for the right given by the State to do business in a corporate capacity, and not a tax on the business which, when incorporated, the relator may carry on. *Home Ins. Co. v. N. Y.*, 134 U. S. 599. (6) A domestic corporation can be subjected to an excise or franchise tax even though it is engaged in both State and interstate business, and the tax may be measured by its whole capital or business or in any other way in the discretion of the legislature without taking any notice of its business arising from interstate commerce, providing no hostile discrimination is made against that part which is interstate commerce

business.  *Seibert v. Pacific Express Co.*, 142 U. S. 339; *People ex rel. v. Wemple*, 131 N. Y. 64; *People ex rel. v. Wemple*, 138 N. Y. 1.  (7)  The same kind of a tax can be laid upon a foreign corporation doing both State and interstate business in this State. *Woodruff v. Parham*, 8 Wall. 123; *Osborne v. Mobile*, 16 Wall. 479; *Seibert v. Pacific Express Co.*, 142 U. S. 339.  (8)  The form of the statute is immaterial.  It is the operation of the statute that determines whether or not it is constitutional or unconstitutional.  *State Freight Tax* case, 15 Wall. 272; *Maine v. Railroad*, 142 U. S. 228.

MARSHALL, J.—This is an original proceeding, by certiorari, to quash the assessment, for the years 1896 and 1897 against relator, made by the State Board of Equalization.  It is submitted upon the petition, return and motion to quash, which are set out in full for a better understanding of the controversy.

The petition is as follows:

"1.  Lon V. Stephens is Governor of the State of Missouri, having in January, 1897, succeeded his predecessor, William J. Stone, who was such Governor from 1893 to 1897.  Edward C. Crow is Attorney-General of the State, having in January, 1897, succeeded R. F. Walker, his predecessor, who was Attorney-General from 1893 to 1897; Frank Pitts is State Treasurer, having succeeded, in January, 1897, his predecessor, Lon V. Stephens, who was State Treasurer from 1893 to 1897; James M. Seibert is now and has been since January, 1893, State Auditor, and A. A. Lesueur is now and has been since January, 1893, Secretary of State; the State Board of Equalization is now and has at all the times hereinafter mentioned been composed of the Governor, Attorney-General, State Treasurer, State Auditor, and Secretary of State.  The matters

hereinafter set forth are of record in the offices of the said officers of the State Board of Equalization.

"2.   The Armour Packing Company is now, and was at all the times hereinafter stated, a corporation, organized and existing under and by virtue of the laws of the State of New Jersey, with its chief office therein, having complied with the act of 1891, so as to do business in this State and engaged at Kansas City, in the State of Kansas, in the general packing business, that is to say, in killing and dressing food animals and the sale of meats thereof.   In this business it has always been necessary to ship in cars the dressed meats from the packing houses in the State of Kansas into and through all the States of the Union and through all the counties in this State traversed by railroads, which includes most of the counties therein; and to that end and for such purpose it has always owned a large number of refrigerator cars specially constructed so as to preserve at a cool temperature dressed meats therein packed for shipment over the various roads of the country, which cars, when loaded and ready for shipment, are placed in the trains operated by railroad companies and hauled to their respective destinations. These cars have painted thereon 'Kansas City Dressed Beef Line,' and there is no corporation or company of that line and no person doing business in that name.

"3.   The legislature of this State in 1895, passed, and the Governor approved, an act in words and figures as follows: `

" 'An act to provide for the assessment and taxation of railway cars other than those which are the property of railroad companies, by amending article 8 of chapter 138, Revised Statutes of Missouri, 1889, relating to assessment and taxation of railroads, by adding thereto eight new sections.

" 'Section 1.    Car companies must file statement of mileage made by cars—railroad companies required to file statement with Auditor—statements to be laid before State Board of Equalization—duty of State Board of Equalization—two per cent State tax to be levied—duty of Auditor to furnish car company with statement showing aggregate mileage, etc.—when tax is to be paid—penalty for refusal to make statement—duty of Auditor and Attorney-General as to delinquents.

" 'Be it enacted by the General Assembly of the State of Missouri, as follows:

" 'Section 1.    That article 8 of chapter 138, Revised Statutes of Missouri 1889, be and the same is hereby amended by adding thereto eight new sections, to be known and designated as sections 7723a, 7723b, 7723c, 7723d, 7723e, 7723f, 7723g, and 7723h, in words and figures as follows:

" 'Sec. 7723a.    The president or other chief officer of every car company, car trust, mercantile company or corporation other than a railroad company operating a line of railroad, and every individual owning any stock cars, furniture cars, . . . tank cars, sleeping cars or any other kind of cars, shall, on or before the first day of January in each year, make to the State Auditor a true, full and accurate statement, verified by the affidavit of the officer or person making the same, showing the aggregate number of miles made by their cars over the several lines of railroad in this State during the year next preceding the first day of June, and a further statement showing the average number of miles traveled per day by the cars of the particular class or classes covered by the statement, in the ordinary course of business during the year.

" 'Sec. 7723b.    The president or other chief officer of every railroad company whose lines run through or

into this State shall, on or before the first day of January, in each year, furnish to the State Auditor a statement verified by the affidavit of the officer or person making the same, showing the total number of miles made by the cars of every such car company, car trust, mercantile company or individual over their lines in this State during the year next preceding the first day of June.   Such statement shall also show, separately, the name and aggregate number of miles traveled over their lines in this State by the cars of each such car company, car trust, mercantile company or individual, and the average number of miles traveled per day by each of the particular classes of cars covered by the statement, in the ordinary course of business during the year.

" 'Sec. 7723c.   Such statements shall be filed by the State Auditor and laid before the State Board of Equalization at the time and in the manner as is required concerning the returns of railroad companies.

" 'Sec. 7723d.   It shall be the duty of the State Board of Equalization to ascertain from said statements the number of cars required to make the total mileage of the cars of each such car company, car trust, mercantile company or individual within the period of one year.   The board shall ascertain and fix a valuation upon each particular class of such cars, and the number so ascertained to be required to make the total mileage of the cars of each such car company, car trust, mercantile company or individual within the period of one year shall be assessed to the respective car companies, car trusts, mercantile companies and individuals.   For the purpose of making this assessment, the board is authorized to base the assessment upon the returns of the several railroad companies, in case any such car company, car trust, mercantile company or individual shall fail or refuse

to make the statement herein required; and in determining the daily average travel of such cars, the board, in so far as may be practicable, shall harmonize the statements of the several railroad companies, car companies, car trusts, mercantile companies and individuals with respect thereto, fixing a uniform daily average travel of cars of each particular class. Such assessment shall be included in the record and proceedings of the board, and shall be filed in the office of the State Auditor on its adjournment.

" 'Sec. 7723e.  Upon the aggregate assessment and valuation of the cars of each such car company, car trust, mercantile company or individual, there shall be levied and collected in lieu of all other taxes a State tax of two per cent.

" 'Sec. 7723f.  On or before the first day of August in each year, the State Auditor shall make out and transmit by mail to the president or other chief officer of every such car company, car trust, mercantile company or individual, a certified statement showing the aggregate mileage of the cars of each such car company, car trust, mercantile company and individual over the several lines of railroad in this State during the period of one year; the number of cars required to make such aggregate mileage in one year the valuation per car; the aggregate valuation of such cars, and the amount of state tax due thereon. On or before the first day of January following, every such car company, car trust, mercantile company or individual shall pay directly into the State treasury the amount of the State tax set out in said certified statement of the State Auditor.

" 'Sec. 7723g.  If any such car company, car trust, mercantile company, individual or railroad company shall fail or refuse to make the statement herein required, or to pay the tax herein imposed, such car

company, car trust, mercantile company, individual or railroad company shall forfeit and pay to the State for such failure or refusal the sum of not less than twenty-five dollars nor more than one hundred dollars per day, for the use of the common school fund, for every day they shall fail or refuse to make such statement or to pay such taxes.

"Sec. 7723$h$. Whenever any such car company, car trust, mercantile company, individual or railroad company shall fail or refuse to make such statement or to pay such tax for the period of forty days, it shall be the duty of the State Auditor to notify the Attorney-General, giving him a full statement of all the facts under his hand and seal, whose duty it shall be to institute a suit or suits in any court of this State or of the United States having jurisdiction, in the name of the State, and at the relation and to the use of the Attorney-General, for the collection of such taxes, penalty or penalties, as the case may be. The property of any such car company, car trust, mercantile company, individual or railroad company shall be subject to seizure under execution, by the proper officer in any county in this State, to satisfy a judgment rendered for such taxes, penalty or penalties.

"'Approved March 18, 1895.'

"4. Neither the Armour Packing Company nor any of its officers, nor any one for the Kansas City Dressed Beef Line, made, for the year 1896, the statement required by section 7723$a$ of the act aforesaid. On the 26th day of August, 1896, the State Board of Equalization did proceed to ascertain the aggregate value of the cars in this State belonging to what it designated as the Kansas City Dressed Beef Line, being in reality the cars owned as aforesaid by the Armour Packing Company, spreading upon the record, as evidence of their action, the following:

" 'The board having under consideration the assessment and valuation of the cars of the several car companies, car trust, mercantile companies or corporations other than those operating a line of railroad or individuals, and having heard all the evidence adduced in relation to the mileage and value of such cars, finds the names of such car companies, car trusts, mercantile companies, individuals and corporations owning cars which are used on the several lines of railroad in the State of Missouri, to be set out in the following statement, showing, also, the aggregate mileage of the cars of each such car company, car trust, mercantile company, individual or corporation, over the several lines of railroad in the State of Missouri during the year next preceding the first day of June, 1895; the daily average travel per car; the number of cars required to make such aggregate mileage in one year; the value per car and the aggregate value of such cars in the State of Missouri, as ascertained and assessed by the board:

| Name of Company. | Aggregate mileage of cars in State. | Daily aver- age travel— of cars— miles. | No. of cars required to make ag- gregate mileage in one year. | Value per car. | Aggregate value in State. |
|---|---|---|---|---|---|
| Kansas City Dressed Beef Line. ..... | 3,993,500 | 40 | 273 | $400 | $109,200' |

"5.    On the 26th day of August, 1896, the State Auditor made out and transmitted to the president of the Armour Packing Company, the following paper:

" 'Treasury Department of Missouri, ⎫
Office of State Auditor, ⎬
City of Jefferson. ⎭

" 'To the President of the Armour Packing Co.:

" 'I, James M. Seibert, State Auditor of the State of Missouri, do hereby certify that the aggregate mile-

age of the cars of the Kansas City Dressed Beef Line over the several lines of railroad in the State of Missouri for the year next preceding the first day of June, 1895, is 3,993,500 miles; that the daily average travel of such cars is 40 miles; that the number of cars required to make such aggregate mileage in one year is 273, that the value per car is $400; that the aggregate value of the cars aforesaid subject to taxation in the State of Missouri is $109,200; and that the state tax due thereon for the year 1896 is $2,184.

" 'In testimony whereof, I have hereunto set my hand and affixed my official seal. Done at office in the City of Jefferson, this 26th day of August, 1896.

" '[Seal].            J. M. SEIBERT,

State Auditor.'

"6. There is no other record as to any assessment or levy under the said act mentioned in paragraph 3 than as herein stated, and the notice mentioned in paragraph 5 hereof was for the cars marked "Kansas City Dressed Beef Line."

"7. The taxable property of the state of Missouri at all the dates herein stated exceeded the sum of $900,000,000.

"8. The act of the legislature set forth in paragraph 3 hereof is unconstitutional and void, for the following reasons:

"(a) The taxes sought to be levied thereunder are not uniform upon the same class of subjects within the territorial limits of the authority levying the tax and are not levied and collected by general law, thereby contravening section 3, article X, of the Constitution of the state, and property is not taxed in proportion to its value in accordance with section 4, article X, of the Constitution.

VOL. 146 mo—43

"(*b*)    The taxes sought to be levied exceed the amount authorized by section 8, article X, of the state Constitution.

"(*c*)    The provisions of the said act are retrospective in operation, in that a tax for 1896 is levied upon the cars had and used in 1894 and 1895, thereby violating section 15, article XI, of the state Constitution.

"(*d*)    The provisions of the law contravene sections 6 and 7 of article X of the Constitution, in that the property is exempted from all taxes of every kind except the state tax.

"(*e*)    The act aforesaid denies to the Armour Packing Company, which is within the jurisdiction of the State, the equal protection of the laws thereof, and takes its property without due process of law, contravening article XIV of the Amendments to the Constitution of the United States, and section 30 of article II of the state Constitution.

"(*f*)    The law imposes a tax on the use of property engaged in inter-state commerce, of which Congress has exclusive jurisdiction, under section 8, article I, of the Constitution of the United States.

"(*g*)    The law imposes a tax on property having no situs in the State, and upon property temporarily in the State and beyond its jurisdiction.

"(*h*)    The law is discriminating and bases an assessment upon artificial and arbitrary rules and is in violation of fixed natural rights as well as of section 4, article II, of the state Constitution.

"9.    Even if it should be held that the act mentioned in paragraph 2 hereof, is valid and constitutional, still the law should be so construed as to be prospective in operation, so that the tax levied for the year 1896 is illegal, for that the law did not go into effect until the 21st day of June, 1895, and upon its face calls

for an assessment on the basis of the cars used for a time previous to the taking effect of the law.

"10. The defendants are carrying the illegal tax upon their records and the Auditor threatens to notify the Attorney-General as required by the act aforesaid, and the latter in turn threatens that he will then proceed to institute suits to collect and enforce such illegal tax, and these threats will be carried into force unless the act of the legislature aforesaid be declared illegal.

"Wherefore relator prays that a writ of *certiorari* be issued and upon the record, when certified, for a decree of this Court annulling, vacating and setting aside the said assessment made by respondents and the levy thereunder, and for such other relief as may be just.

### Second Count.

"1. Each allegation of paragraphs 1, 2, 3, 7, 8 and 10 of the first count is re-averred the same as if specifically again set forth and copied herein.

"2. On the —— day of December, 1896, the Armour Packing Company made, for the year 1897, the statement required by section 7723a of the act aforesaid. Upon the —— day of July, 1897, the State Board of Equalization did proceed to ascertain the aggregate value of the cars in this state belonging to the said company, spreading upon its record, as evidence of their action, the following: ·

" 'The board having under consideration the assessment and valuation of the cars of the several car companies, car trusts, mercantile companies or corporations other than those operating a line of railroad or individuals, and having heard all the evidence adduced in relation to the mileage and value of said cars, finds the names of such car companies, car trusts, mercantile companies, individuals and corporations

owning cars which are used on the several lines of rail-
road in the State of Missouri, to be as set out in the
following statement, showing, also, the aggregate
mileage of the cars of each such car company, car
trust, mercantile company, individual or corporation
over the several lines of railroad in the State of Mis-
souri, during the year next preceding the first day of
June, 1896; the daily average travel per car; the num-
ber of cars required to make such aggregate mileage in
one year; the value per car and the aggregate value of
such cars in the State of Missouri, as ascertained and
assessed by the board.

| Name of Company. | Aggregate mileage of cars in State. | Daily aver- age travel— of cars— miles. | No. of cars required to make ag- gregate mileage in one year. | Value per car. | Aggregate value in State. |
|---|---|---|---|---|---|
| Armour Pack- ing Co. ... | 6,343,711. | 80 | 216 | $600 | $129,600 |

"3.   On the 31st day of July, 1897, the State
Auditor made out and transmitted to the president of
the Armour Packing Company the following papers:

'Treasury Department of Missouri ⎫
Office of State Auditor ⎬
City of Jefferson. ⎭

"  'To the president of the Armour Packing Co:

'I, James M. Seibert, State Auditor of the State
of Missouri, do hereby certify that the aggregate
mileage of the cars of the Armour Packing Co., over
the several lines of railroad in the State of Missouri for
the year next preceding the first day of June, 1896, is
6,343,711 miles; that the daily average travel of such
cars is 80 miles; that the number of cars required to
make such aggregate mileage in one year is 216; that
the average value per car is $600; that the aggregate

value of the cars aforesaid subject to taxation in the State of Missouri is $129,600, and that the state tax due thereon for the year 1897 is $2,592.

'In testimony whereof I have hereunto set my hand and affixed my official seal. Done at office in the City of Jefferson, this 31st day of July, 1897.

'[SEAL]                       J. M. SEIBERT,
                                 State Auditor.'

"4. There is no other record as to any assessment or levy under said act of the legislature than as herein stated.

"Wherefore relator prays that a writ of certiorari issue and, upon the record, when certified, for a decree of this court annulling, vacating and setting aside the said assessment made by respondents and the levy thereunder, and for such other relief as may be just."

The return is as follows:

"By virtue and in obedience to the said writ of certiorari aforesaid, we do hereby certify and return to the Supreme Court In Banc that we have annexed hereto and file herewith, under the hand and seal of said board, transcripts of the two assessments for the years 1895 and 1896 (marked Exhibits A and B), certified to by us, of the proceedings relative to the assessment of taxes against relator and relator's property, described in the petition in this proceeding; and a statement of the other matters specified in and required by said writ, and we further certify and return to said court that it was the duty of said State Board of Equalization to fix a valuation and assessment for the purpose of taxation, under the laws of this State, on the cars of the several car companies, car trusts, mercantile companies, and corporations other than those operating a line or lines of railroad, or individuals so operating said car companies, car trusts or mercantile companies, and that for the purpose of

fixing said valuation and assessment said Board heard evidence of car accountants and others in relation to mileage and value of such cars, and ascertained the names of such car companies, car trusts, mercantile companies, individuals and corporations owning cars which are used on the several lines of railroad in the State of Missouri, and also the aggregate mileage of each such car company, car trust, mecantile company or individual or corporation over the several lines of railroad in the State of Missouri, during the two years respectively next preceding the first day of June, 1895 and 1896; also the daily average miles per car; likewise the number of cars required to make such aggregate mileage in one year; also the value per car and the aggregate value of all such cars in the State of Missouri, and cause the same to be spread upon its records as a part thereof, and as a basis for the levy of the taxes mentioned in the petition herein, as will be more fully seen by Exhibit A and Exhibit B hereto attached.

"And further making return respondents say that relator's cars were assessed for the taxes of the year 1895 as belonging to the Kansas City Dressed Beef Line.

"Respondents further making return herein say that they deny:

"*First.* That the act of the legislature set forth in paragraph 3 of the petition in this proceeding is unconstitutional and void.

"*Second.* Respondents deny that the taxes sought to be levied thereunder are not uniform on the same class of property belonging to all subjects within the territorial limits of the authority levying the tax, and are not levied and collected by general law as provided by section 3, article X, of the Constitution of the State of Missouri.

"*Third.* Respondents deny that the taxes sought to be levied exceed the amount authorized by section 8, article X, of the State Constitution.

"*Fourth.* Respondents deny that the provisions of said act are retrospective in operation as to the whole of the taxes for the year 1896, levied upon cars and used in 1895.

"*Fifth.* Respondents deny that the provisions of said law as set forth in paragraph 3 of the petition, providing for the taxation of this class of property, is in contravention of sections 6 and 7 of article X of the Constitution, because the property in said law named is exempted from all taxes of every kind except a state tax.

"*Sixth.* Respondents deny that the said act mentioned in paragraph 3 of the petition herein denies to the Armour Packing Company within the jurisdiction of the State of Missouri equal protection of the laws thereof, as contemplated by Article XIV of the amendments of the Constitution of the United States. And respondents further making return say that the assessment of the taxes and the amount thereof upon the property of the relator is uniform upon the same class of property belonging to other subjects within the territorial limits of the State of Missouri, and that said taxes are so levied and assessed by a general law, and that said taxes so levied and sought to be collected do not exceed the amount authorized by the Constitution of the State of Missouri, and are not retrospective in operation so far as relator is concerned, and that said taxes do not contravene the provisions of the Constitution of this State or the Constitution of the United States, in any manner whatever.

"Respondents having now here made a full and complete return pray that the writ be dismissed.

"In witness whereof, respondents hereunto subscribe their names and caused the seal of the State Board of Equalization and of the State of Missouri to be affixed, this —— day of October, A. D. 1897."

The motion to quash is as follows:

"Now comes relator and moves the court:

"1.   To set aside, vacate and annul the proceedings had and assessment made by the State Board of Equalization upon August 26th, 1896, as set forth in Exhibit "A" to the return, for the reasons set forth in relator's amended petition and printed briefs filed herein.

"2.   To set aside, vacate and annul the proceedings had and assessment made by the State Board of Equalization upon July 31st, 1897, as set forth in Exhibit "B" to the return, for the reasons set forth in relator's amended petition and printed brief filed herein."

I.

From these proceedings it is apparent, therefore, that the real question at issue, is the constitutionality of the Act of March 18th, 1895.    Laws 1895, p. 246. The relator claims that the Act imposes a *property* tax, and hence is void for the many reasons assigned by it, and the respondents claim that it is a *license* or *franchise* tax, "in the nature of an *excise tax* on this class of corporations."

The Act of 1895, is entitled, "An Act to provide for the assessment and taxation of railway cars other than those which are the property of railroad companies, by amending Article 8 of Chapter 138, Revised Statutes of Missouri, 1889, relating to assessment and taxation of railroads, by adding thereto eight new sections."

The sections added are numbered 7723a, to 7723h, inclusive.    Section 7723, Revised Statutes 1889, is the

section of the statutes which creates the State Board of Equalization, and gives it jurisdiction to assess, adjust and equalize railroad property for the purpose of general taxation. Chapter 138 is devoted to the "Revenue," and article 8 relates to the "Assessment and Taxation of Railroads."

The relator is a corporation organized under the laws of the State of New Jersey, and is engaged, at Kansas City, Kansas, in the general packing business, that is, in killing and dressing food animals, and in selling the meats thereof. It owns a number of refrigerator cars, in which it ships its goods to various counties in this State, and to other States in the Union. Its cars are hauled by various railroads.

It appears from the petition that the relator's place of business is in Kansas City, in the State of Kansas, and that the cars, here taxed, are attached to its business, as an incident thereto, and are loaded in the State of Kansas, and shipped into and through the State of Missouri. These allegations are not denied by the return, and hence they must be taken as true in this case.

Under the circumstances the relator though a foreign corporation as to the State of Kansas has acquired a domicile in that State and the cars can only be taxed in that State. *Comstock v. Grand Rapids* (Mich), 20 N. W. Rep. 623: *City of Dubuque v. Ills. Central R. R. Co.*, 39 Iowa, l. c.83; *British Com. Life Ins. Co. v. Com'rs. of Taxes*, 31 N. Y. 32; *Fargo v. Michigan*, 121 U. S. 230; *Pullman's Car Co. v. Pennsylvania*, 141 U. S. 18; *Cleveland &c. R. R. Co. v. Backus*, 154 U. S. 439; *Postal Telegraph Co. v. Adams*, 155 U. S. 688; *Adams Express Co. v. Kentucky*, 166 U. S. 171; *Hall v. American Refrigerator Transit Co.*, 51 Pac. Rep. 421; Welty on Law of Assessments, secs. 49, 50, 51.

The reason of the rule is that the cars could not be reached for assessment and taxation anywhere else, and the company owes this just return to the State of Kansas for the protection it receives from it.

The cars are in the State of Missouri, only *in transitu*, and have no situs in this State. Hence they are not subject to assessment or taxation in this State. *Fargo v. Michigan,* 121 U. S. 230; *California v. Railroad,* 127 U. S. 1; *Railroad Co. v. Pennsylvania,* 15 Wall. 232; *People ex rel. v. Wemple,* 138 N. Y. 1; 2 Dillon on Mun. Corp., secs. 787, 788.

Being in Missouri only in transit, for the purpose of bringing merchandise from another State into or through this State, they are instruments of inter-state commerce and this State can not impose any tax upon them. *Western Union Telegraph Co. v. Texas,* 105 U. S. 460; *Leloup v. Mobile,* 127 U. S. 640; *Pickard v. Pullman Co.,* 117 U. S. 34; *Gloucester Ferry Co. v. Pennsylvania,* 114 U. S. 196; *Railroad. v. Pennsylvania,* 15 Wall. 232; *Pullman's Co. v. Pennsylvania,* 141 U. S. 18; *Pacific Express Co. v. Seibert,* 142 U. S. 339. Being instruments of inter-state commerce Congress alone has jurisdiction over them under section 8, article 1, Constitution of United States, except as above indicated the cars can be taxed as property by the State in which the company has acquired a domicile and the cars have a situs.

## II.

But it further appears from the letter, context and purpose of the law that the act in question imposes a tax on property and not a license tax. The title of the act calls it an "assessment and taxation of railway cars other than those which are the property of railway companies," and it is made part of the law relating to the "Revenue," and is in *pari materia* with the law

relating to the assessment and taxation of railroad property. The whole purpose of the act was to provide a different method of reaching this species of property and subjecting it to taxation, from that prescribed by law for discovering and taxing property generally, and to fix the rate of the tax to be imposed. The difficulty of locating and valuing property of this character doubtless inspired this method of reaching it.

The question then is whether, as a tax on property, it is constitutional.

The method contemplated by the act is: Ascertain the number of miles actually traveled in this State by all the cars of the owner; an average is then made of all cars to ascertain the daily average of the cars; the total miles traveled per year by all the cars are divided by 365 to ascertain the number of miles, actually traveled per day, and this result is divided by the average number of miles made by each car. This gives the number of cars necessarily employed to travel the total number of miles in a year, and multiplying the number of cars by the average value of the cars, produces the total value of the property, on which a two per cent tax is required to be levied.

Section 8 of article X of the Constitution is as follows: "The state tax on property, exclusive of the tax necessary to pay the bonded debt of the State, shall not exceed twenty cents on the hundred dollars valuation; and whenever the taxable property of the State shall amount to nine hundred million dollars, the rate shall not exceed fifteen cents."

This is not a tax necessary to pay the bonded debt of the State, but is a tax for the general purposes of the State. Section 7509, Revised Statutes 1889, fixes the rate of taxation for such purposes at one fifth of one per cent as the constitutional provision, above quoted, limits it. The tax imposed by the act of 1895

is two per cent, which is one dollar and eighty cents on the hundred dollars valuation in excess of the limit fixed by the Constitution and the laws of the State.

In the *City of Brookfield v. Tooey*, 141 Mo. 1. c. 625, a tax of one per cent on the cash value of the goods, wares and merchandise owned by the defendant, imposed as an occupation tax, was held to be unconstitutional, because "in direct disobedience of sections 3 and 11 of Article X of the Constitution of Missouri." And the court, speaking through GANTT, P. J., said of the tax, "After a careful investigation of the question mooted and most ably discussed by counsel, it seems palpable that this is a property tax, pure and simple. It is an obvious misnomer to call it a tax upon occupation. . . . . . It is sufficient to say the present tax is so plainly a property tax and an effort to evade the constitution that it is illegal and void."

Acts of the legislature authorizing the levy of a tax in excess of the constitutional limitation are void. *Overall v. Ruenzi*, 67 Mo. 203; *Ewing v. Board*, 72 Mo. 436; *Arnold v. Hawkins*, 95 Mo. 569; *Black v. McGonigle*, 103 Mo. 192.

The act in question is a whole scheme and must all stand or fall together, notwithstanding section 7723a, providing for a tax of two per cent, is a separate section, and if eliminated would leave only the methods provided by the act for discovering, assessing and taxing the property, and the constitutional rate of taxation for state purposes to apply as in other cases. For the act provides that the tax of two per cent shall be in lieu of all other taxes, and it is not reasonable to hold that the State intended to exempt such property from county, city and school taxes and to subject it to State taxes alone according to the usual rate of taxation. Such a construction would reduce the amount of taxes the company would have to pay, and would

not enhance the State's revenue, but would simply cut off a part of that of the county, city and schools. The method to be employed and the rate fixed are so welded together that they must be construed as inseparable parts of one whole scheme, and must stand or fall together.

The whole scheme failing, the property would be properly taxed like any other property according to the law as it existed prior to the enactment of the act of 1895, subject to what has hereinbefore been said with respect to the right of the State to tax it at all. These observations are superadded because there may be other property of other persons or corporations affected by the act which has a situs in the State and hence is subject to taxation here, just as this property is in the State of Kansas.

No multiplication of reasons or accumulation of precedents, no rounded period, or trite phrase, is necessary to illuminate the plain truth that the act of 1895 is a tax on property and violates the constitutional limit of taxation for general state revenue. The act prohibits any other tax being levied, and while the total required to be paid may not exceed the total taxation allowed by the Constitution to be levied on such property for state, county, city and school purposes, still it exceeds the amount allowed to be levied for State purposes alone, and is therefore void.

This conclusion makes it unnecessary to consider the other questions which have been so ably argued by the counsel in the case.

The motion to quash is sustained, and the record of the State Board of Equalization and the assessment by it of the cars of relator for the years 1896 and 1897, is quashed.

GANTT, C. J., BURGESS, BRACE and WILLIAMS, JJ., express their views in a separate opinion. ROBINSON, J., concurs as to 2d paragraph. SHERWOOD, J., concurs as to 2d paragraph, and as to 1st paragraph thinks it must affirmatively appear from the record that the Board of Equalization has jurisdiction.

### SEPARATE OPINION.

WILLIAMS, J.—I concur in quashing the record in the State Board of Equalization, levying a tax of two per cent upon the property of the relator, under section 7723e of the act of 1895, referred to in the opinion, on the ground that said *section* of the act is in conflict with the Constitution for the reasons stated in the opinion. I am not prepared to agree that, because this *section* is invalid, the *whole act*, providing for the assessment of the character of property therein described must be declared void.

I do not think that we can look beyond the return of the Board of Equalization in this proceeding; and the record of said Board does not show that the situs of the property of relator is outside of the limits of this State. GANTT, C. J., BURGESS and BRACE, JJ., agree in these views.