ALBERT R. STROTHER et al. v. KANSAS CITY
et al., Appellants.

In Banc, June 19, 1920.

1. **POLICE DEPARTMENT: Tax for Maintainance: Statutory Direction.** The statute (Sec. 9779, R. S. 1909) by expressly declaring that the expense of the police department of Kansas City shall be paid "out of the next annual revenue of the city" plainly excluded the implication of an intention to confer authority upon the city to levy a special state tax for the purpose.

2. ———: ———: **State Obligation: Maximum Rate.** Notwithstanding a metropolitan police department is a state institution and an integral part of the general means used by the State to preserve peace and security within its domain, and is not a mere municipal system established for a local purpose, the Legislature may lay the burden of supporting it upon the city and require its expenses to be paid out of the city's annual revenues, and the city in carrying out that injunction cannot exceed the maximum rate of taxation limited by the Constitution, either in the form of a general municipal tax or in the form of a special state tax; and where the city has levied other taxes equal to the maximum constitutional limit, it cannot legally levy an additional special tax of two mills to pay the expenses of the police department, but those expenses must be paid out of its general revenues.

3. ———: ———: **Maximum City Tax.** Cities cannot exceed, for any purpose, the limit of taxation fixed by Section 10 of Article XI of the Constitution, for that section says that the rates mentioned "shall apply to taxes of every kind and description, whether general or special," except those levied to pay past indebtedness.

4. ———: ———: **General and Particular State Tax.** The State having levied the maximum tax of fifteen cents on the hundred dollars' valuation for general state purposes, is restricted by the Constitution from levying a higher rate either for general state or special state purposes, and likewise is the city prohibited from levying a further state tax for a local state purpose; and the contention that the limit prescribed by Section 8 of Article X, applies only to the rate for general state purposes when laid on property throughout the State, and does not restrict the power to lay more taxes for a particular state purpose which immediately affects one locality and falls exclusively upon the property therein, cannot be allowed, for two reasons, first, because the Legislature has no power to levy any such special or local state tax, and, second, it has not attempted to do so, or to empower the city to levy it.

5. ———: ———: ———: **Levy As Incident of Obligation: Ex Necessitate.** The plea that as the Legislature laid on the city the obligation to defray the expense of its police department and as money to do that can be obtained only by a new tax, the power of the city to lay a special tax for the purpose in excess of the constitutional maximum limit goes with the obligation as an incident and *ex necessitate*, cannot be allowed, for the reason the statute required the expense to be paid "out of the next annual revenue of the city," and therefore the asserted power did not go as an incident.

Appeal from Jackson Circuit Court.—*Hon. Thomas J. Seehorn,* Judge.

AFFIRMED.

*E. M. Harber* and *M. A. Fyke* for appellants.

(1) Under the statute (R. S. 1909, sec. 9778) it is made mandatory upon the city to support and maintain the Metropolitan Police System in Kansas City. Reynolds v. Jost, 26 Mo. 51; State ex rel. v. Mason, 153 Mo. 51. (2) The tax levied for the support and maintenance of a metropolitan police system is not levied for a municipal purpose. Hence it is not violative of Section 1 of Article 5 of the Charter of Kansas City. Nor is it violative of Section 11, Article 10 of the Constitution of Missouri. State ex rel. v. Field, 119 Mo. 593; State ex rel. Taro v. City of Everett, 172 Pac. 752; Young v. Kansas City, 152 Mo. 661; State v. Owsley, 122 Mo. 68; State v. Board of Education, 141 Mo. 49. (3) The two mill tax for the support of the police system is not violative of Section 8, Article 10 of the Constitution of Missouri. Hamilton v. County Court, 15 Mo. 1; State ex rel. v. County Court, 34 Mo. 546; Commonwealth v. Commrs., 37 Pa. St. 277; Commonwealth v. Perkins, 43 Pa. St. 400; State. v. Street, 117 Ala. 203; Hare v. Kennedy, 83 Ala. 608; Gilkerson v. The Federal Justices, 13 Gratt. 577; Douglass v. Town of Harrisonville, 9 W. Va. 135; Powell v. Parkersburg, 28 W. Va. 706; Norfolk v. Ellis, 26 Gratt. 226; Eyre v. Jacob, 14 Gratt. 434; Norfolk v. Chamberlain, 89 Va. 202. (4) The establishment of a metropolitan police system for the large cities is but the exercise of the police power of the sovereign state. Reynolds v. Jost, 265 Mo. 51. "The exercise of the police power of the State shall never be abridged." Mo. Constitution, sec. 5, art. 12. And is inalienable, even by express grant. Tranbarger v. Railroad, 250 Mo. 55; Railroad v. Tranberger, 238 U. S. 76; State v. Public Service Comm., 204 S. W. 49; City of Fulton v. Public Service Comm.,

204 S. W. 386; Nut & Bolt Co. v. Lt., Heat & Power Co., 204 S. W. 1074; St. Louis v. Public Service Comm., 207 S. W. 799. (5) The maintenance of city government is essential to the health, safety and general welfare of the people of the city, and consequently the limitation of indebtedness imposed (by the Constitution) could not have been intended to be so far exclusive as to necessitate the suspension of government. Rauch v. Chapman, 16 Wash. 568, 48 Pac. 253, 36 L. R. A. 407; Grant v. City of Davenport, 36 Iowa, 396; Gladwin v. Ames, 30 Wash. 608, 71 Pac. 189. (6) The obligation to maintain the metropolitan police system is not an obligation or debt incurred by assent, agreement or contract, but is an obligation imposed by law, and stands upon the same footing as a debt or judgment arising in an action *ex delicto.* The estimate of the police commissioners is in the nature of a judgment against the city, the payment of which is mandatory. Conner v. Nevada, 188 Mo. 153; State ex rel. v. Pike County, 144 Mo. 280; Ex parte Loving, 178 Mo. 220; State ex rel. v. Board of Education, 153 Mo. 23; Lewis v. Widber, 99 Cal. 412; Rauch v. Chapman, 16 Wash. 568.

*James G. Smart* for respondent; *Albert R. Strother pro se.*

(1) The law establishing the Metropolitan Police System in Kansas City, in express terms requires the expenses thereof to be paid out of the "annual revenue of the city," and there is no other source provided for the payment thereof. R. S. 1909, sec. 9778; State ex rel. v. Jost, 265 Mo. 51; R. S. 1909, art. 17, chap. 84, *passim;* Laws 1911, p. 348; Laws 1915, p. 364. See also: State ex rel. v. Mason, 153 Mo. 23; State ex rel. v. St. Louis County Court, 34 Mo. 546; Hamilton & Treat v. St. Louis County Court, 15 Mo. 3. (2) The "annual revenue of the city" is the money derived from general taxes, license taxes and other public municipal charges, not impressed with a trust. State ex rel. v. Mason, 153 Mo. 23, 54. (3) The law imposing the obli-

gation to support the police department having specified the fund from which such expenses are to be paid, no other funds can be used for such purpose. The two-mill tax is, therefore, void. Pettis County v. Kingsbury, 17 Mo. 479; State ex rel v. Trammel, 106 Mo. 510. (4) The charter of Kansas City limits the rate of the general tax for municipal purposes to ten mills on the dollar of assessed value, and for building purposes after a vote of the people to two and one-half mills on the dollar, and Ordinance 34613 having levied these rates in full, the excess two-mill tax is void. Kansas City Charter 1908, pp. 206-211; Sections 1 and 2 Article 5; Carr v. St. Louis, 9 Mo. 190. (5) The Constitution limits the rate of taxes that can be levied by Kansas City for municipal purposes to ten mills on the dollar. The two-mill tax being in excess of this rate is void. Mo. Const. sec. 11, art. 10; Overall v. Ruenzi, 67 Mo. 203; Arnold v. Hawkins, 95 Mo. 569; Black v. McGonigle, 103 Mo. 192; Brookfield v. Tooey, 141 Mo. 619; Brooks v. Schultz, 178 Mo. 222; Union Trust Co. v. Pagenstecher, 221 Mo. 121; Board of Commrs. v. Peter, 253 Mo. 520; (6) By the Constitution, Kansas City cannot "become indebted in any manner or for any purpose to an amount exceeding in any year the income and revenue provided for such year, without the assent of two-thirds of the voters thereof, voting at an election to be held for that purpose." The support of the police department is not one of the purposes for which such indebtedness may be increased and it is not claimed any such assent was given to the two-mill tax. This limitation applied to all obligations *ex contractu* whether created by contract or imposed by legislative enactment. The answer pleads that the total municipal obligations including the police expenses could not be met by the general levy of ten mills and that therefore the two-mill tax was "necessary." The legal conclusion is that the two-mill tax is illegal and void. Mo. Const. sec. 12, art. 10; Barnard v. Knox County, 105 Mo. 382; Mountain Grove Bank v. Douglas County,

146 Mo. 42; State ex rel. v. Wabash Rd. Co., 169 Mo. 563; State ex rel. v. Wilder, 197 Mo. 1; State ex rel. v. Gordon, 265 Mo. 181; Lake County v. Rollins, 130 U. S. 662, 32 L. Ed. 1060. (7) If the two-mill tax is for a state purpose, then it could only be levied by the General Assembly itself by a law providing for it, and there is no such law. Mo. Const. secs. 1 and 10, art. 10; State ex rel. v. Ashbrook, 154 Mo. 375, 388. (8) If the two-mill tax is for a state purpose, then it is void because it exceeds the limit fixed by the Constitution and laws for state taxes. Mo. Const. sec. 8, art 10; R. S. 1909, sec. 11415, as amended by Laws 1915, p. 393; R. S. 1909, sec. 11416; State ex rel. v. Stephens, 146 Mo. 662; Board of Commrs. v. Peter, 253 Mo. 520, 537. See also: Mo. Const. sec. 16, art. 9; St. Louis v. Dreisoerner, 243 Mo. 217. (9) The two-mill tax, being unconstitutional and void, to sell the property of respondents for non-payment thereof, as appellants admit they intend to do if such tax is not paid, would deprive respondents of their property without due process of law in violation of Missouri Constitution, sec. 30, art. 2, and of Section 1 of the 14th Amendment of the Constitution of the United States.

GOODE, J.—The parties are agreed about the facts and the issues in this case, so we adopt the statement of them prepared by the respondent.

"The Board of Police Commissioners of Kansas City, Missouri, made and certified to the Common Council of said city, an estimate of the amount of money necessary for the support and maintenance of the police department of said city for the fiscal year 1919, as required by Article 17 of Chapter 84 of the Revised Statutes of 1909, as amended. Thereafter, and on April 22, 1919, said Common Council passed and the Mayor approved Ordinance 34613, levying property taxes for said city for said fiscal year. The first section of the ordinance is as follows:

" 'Be it Ordained by the Common Council of Kansas City:

" ' Section 1. Taxes for the fiscal year of 1919, commencing on the 21st day of April, 1919, are hereby levied on all property in Kansas City, Missouri, liable to taxation for state and county purposes, and not by general law exempt from municipal taxation, as follows, to-wit:

" 'First. A general tax of ten mills on each dollar of assessed value for general purposes.

" 'Second. A tax of one mill on each dollar of such assessed value, which tax is necessary and will be sufficient to pay the amount certified to the Common Council by the Comptroller to be raised by taxation for the payment of coupons falling due during the fiscal year 1919.

" 'Third. A tax of one-half mill on each dollar of such assessed value, which tax is necessary for the maintenance of the Water Sinking Fund, created for the redemption of the city's outstanding Kansas City judgment and water works bonds, at the time of their maturity.

" 'Fourth. A tax of one mill on each dollar of such assessed value, which tax is necessary for the maintenance of the General Sinking Fund, created for the redemption of the city's outstanding Kansas City general bonds, at the time of their maturity.

" 'Fifth. A tax of two mills on each dollar of such assessed value for the support and maintenance of the Metropolitan Police System in Kansas City, Missouri.'

"The respondent Albert R. Strother, owning real property subject to city taxation, tendered all the taxes levied by said ordinance, except the two-mill tax levied by subdivision fifth of Section 1 for the support and maintenance of the police department. This tender was refused. Thereafter said respondent, as plaintiff, filed this suit to enjoin the collection of said two-mill tax and to remove the cloud cast thereby upon his title to said real property. This suit was brought on behalf of the named plaintiff and all other persons similarly situated who might elect to come in and be made parties

thereto.   Thereafter the respondent, Williams Realty
Company, as owner of real property subject to city tax-
ation, after a similar tender and refusal, came in and
was made a party plaintiff and filed a similar petition.

"The basis of the suit is that said two-mill tax is
illegal and unconstitutional because in excess of the
highest rate of taxation authorized by the charter of
Kansas City and particularly by Sections 1 and 2 of
Article 5 of such charter, and also in excess of the high-
est rate of taxation which Kansas City is authorized
by the State Constitution, and particularly by Sections
11 and 12 of Article 10 thereof, to levy, and is also in
violation of Sections 1 and 8 of said Article 10, and Sec-
tion 30 of Article 2 of said Constitution and of Section
1 of Article 14 of the Amendments to the Constitution
of the United States.

"The answer of the defendants admits the facts
pleaded, but denies the legal conclusions stated.   It fur-
ther pleads the estimate of the Board of Police Commis-
sioners, and alleges that it was mandatory upon the city
to provide the money to meet such estimate which could
not be done, and also provide money for other city ex-
penses by the ten mills levied for municipal purposes,
and it was therefore 'necessary, in order that sufficient
money might be raised for municipal purposes to carry
on and support the business of the city, to levy a tax
of ten mills on the dollar, and for the support and main-
tenance of the Metropolitan Police System, a further
tax of two mills on the dollar;   that said two-mill tax is
not a tax for municipal purposes, but is to meet an obli-
gation or liability imposed on the city by the State
which can be met in no other way, and said levy is not
violative of any provision of the charter, or of any
provision of the Constitution of Missouri, or of the
United States.'

"The reply admits the obligation of the city to sup-
port the police department and alleges that by the ex-
press terms of the law imposing such obligation it must
be met 'out of the annual revenues of said city and out

of no other source or revenue whatever,' and that there is no law authorizing said two-mill tax.

"It further alleged that if said two-mill tax is for 'a state purpose as alleged in said answer (which allegations plaintiff denies) then any law by which such obligation or liability was attempted to be imposed upon said city, and by which it was attempted to authorize said city to levy a tax to meet the same, would be in violation of said Section 1 of Article 10 and void, and said tax is therefore unconstitutional and void as in violation of said Section 1 of Article 10.'

"The reply then pleads Section 8 of Article 10 of the Constitution, and alleges that the taxable property of the State is more than $900,000,000, and that the County Court of Jackson County, on May 20, 1919, levied the full fifteen cents on the one hundred dollars for state purposes, and that if said two-mill tax is 'a state tax, as alleged in said answer (which allegation plaintiff denies) then the same was and is in excess of the rate of tax for all state purposes as fixed by said Section 8 of Article 10 and by the laws of the General Assembly passed thereunder,' and is therefore void.

"The defendants filed a motion for judgment in their favor on the pleadings and this was overruled and exceptions saved. The case was submitted on the pleadings and agreed facts, and judgment was rendered for respondents as prayed in their petition, they paying into court, as required by such judgment, the taxes tendered and found legally due. After the usual steps, defendants appealed to this court."

We have been pointed to no statute and know of none which gives the power to the Common Council of Kansas City, to levy a tax of two mills on the dollar of assessed values in the city, in order to defray the cost of maintaining its Metropolitan Police System. The able counsel for defendants do not say there is a statute which directly confers the power, but insist it was conferred by necessary implication when the General Assembly enacted the law imposing on the city the obliga-

tion to maintain the department. One of the premises laid down as leading to that conclusion is that it was within the constitutional power of the General Assembly to create a police system for the city as a necessary instrumentality for the discharge by the State of its fundamental duty to protect life and property; and that it was also within the power of the Assembly to lay upon property in the city the burden of defraying the expense of the system; a proposition upheld generally by both courts and commentators, and by the decisions of this court in State ex rel. Reynolds v. Jost, 265 Mo. 51, and State ex rel. v. Mason, 153 Mo. 51. The second premise is that the system created in the exercise of said power, is a state and not a local system; a proposition also decided in the cited cases. From those two premises the conclusion is drawn that when the General Assembly established the system, without appropriating or otherwise providing the money to maintain it, authority was delegated to the city as the State's agent to levy and collect a tax for the purpose. The pertinent statutes are found in Article XVII, Chapter 84, Revised Statutes 1909, which article contains the laws applicable to cities with one hundred and fifty thousand and less than three hundred thousand inhabitants. [R. S. 1909, Art. 17, Ch. 84.] Section 9778 of that article charges the police board of a city belonging to the described class, as Kansas City does, with the duty to estimate at the beginning of each calendar year, what sum of money will be needed for the ensuing fiscal year to enable the board to perform the duties imposed on them by the statutes, and to certify the estimate to the municipal assembly. Upon receipt of the certificate the assembly is commanded to set apart and appropriate the amount so required, *payable out of the next annual revenue of the city.* Provision is also made for the payment in the same way for any extra police force the board may find it necessary to call out. The following section authorizes the board of police to make monthly requisitions on the treasurer, etc., of the city for the sums the board may deem neces-

sary for the execution of their duties during the months, and says the sums so required shall be appropriated, and, by said disbursing officer, placed to the credit of the police department, and such money so appropriated shall be paid out of the city treasury only upon warrants drawn by the president of the board and countersigned by the city comptroller, as it may be needed to meet the current expenses of the board of police. [Sec. 9779.]

Even if authority to the city to levy a special tax to maintain the police department could be implied in any event, clearly it cannot be when the Legislature has expressly declared the expense of the department shall be paid *out of the next annual revenue of the city.* By providing for maintenance out of the annual revenues, the Legislature plainly excluded the implication of an intention to confer authority to levy a special state tax for the purpose. The designation of a particular mode of payment is inconsistent with the right to adopt a different mode, on the principle that the expression of one theory operates to exclude alternatives. [State ex rel. v. Trammell, 106 Mo. 510.]

As the Police Department of Kansas City is a state institution, and an integral part of the general system of means used by the State to preserve peace and security within its domain, and is not merely a municipal system established for a local purpose, it would seem that its cost would fall naturally and according to the intention of the present Constitution, upon the revenues of the State. [Constitution, art. 10, sec. 11.] However, it has been settled by repeated decisions that the Legislature may lay the burden of supporting a police department on the annual revenues of the city where the department is established, without infringing the Constitution, and that question cannot be reopened. [State ex rel. v. Mason; State ex rel. v. Jost, supra.] But it has not been decided that the constitutional limitation on taxation may be exceeded to maintain a police department or for any other purpose; but that those limitations cannot be exceeded has been declared, we

believe, in every decision upon the subject. [State ex
rel. v. Stephens, 146 Mo. 662; State ex rel. v. Railroad,
169 Mo. 563.] According to the conceded facts, the city
has levied other taxes to the constitutional limit for the
year 1919, and the tax in controversy, if laid by the city
in its own capacity, carries the total levy of two mills
on the dollar beyond that limit; that is, the special levy
is excessive in the entire amount of it. Cities cannot
exceed, for any purpose, the limit of taxation fixed by
Section 10 of Article XI of the Constitution, because the
section says the rates allowed "shall apply to taxes of
every kind and description, whether general or special,"
except those levied to pay past indebtedness. In enforc-
ing that declaration of the Constitution, this court de-
cided that a city tax laid in excess of the limitation to
maintain a library was void, although the Legislature
had authorized it. [Brooks v. Schultz, 178 Mo. 222.]
The position taken in that case in favor of the special
tax was that it was not levied under the authority of
Section 11, Article X, which purports to limit the rate
of taxation allowed to municipalities "for city and town
purposes," but instead, under a power specially granted
by the General Assembly, was levied pursuant to Sec-
tion 10 of said article, which prohibited the Assembly to
impose taxes on cities for municipal purposes, but in
words immediately following, declared the Assembly
"may, by general law, vest in the corporate authorities
thereof the power to assess and collect taxes for such
purposes." The court said Section 11, if interpreted
literally, only limited the power of cities to tax for city
purposes; that is, to raise the general revenues, there-
by giving room for the notion that when empowered by
the legislature, a municipality might make a special levy
for an expense not incidental to carrying on its govern-
ment. The court then rejected said notion, saying the
provision of the Constitution making the rates pre-
scribed apply to taxes of every description, was intended
to preclude such an interpretation; said further, that
the General Assembly could not, by force of Section 10,

Article X, of the Constitution, authorize municipal corporations to levy taxes for local purposes above the rates prescribed in Section 11. That decision is conclusive in favor of the proposition that the levy by Kansas City in excess of ten mills on the dollar, was void if the excess was for local purposes.

Counsel for the city maintain in an ingenious argument, that the State itself, through the General Assembly, levied the tax in controversy, using Kansas City as its agent for the purpose, and made the levy for a general state purpose, instead of a local one. But a state tax exclusive of the one in question, has been levied for the year 1919 up to the constitutional limit of fifteen cents on the hundred dollars of assessed values. Counsel contend that limit, which is prescribed in Section 8 of Article X, governs only the rate *for general state purposes when laid upon property throughout the State*, and does not restrict the power to lay more taxes for a particular state purpose which immediately affects one locality and falls exclusively on the property therein: that this power, which is asserted in effect to be unrestricted, may be exercised either by laying the tax directly by a statute, or indirectly by empowering a city to lay it. The tenor and spirit of the decisions construing the constitutional limitations on taxation for both state and local purposes, have been uniformly against this interpretation, even if the exact point remains undecided. In State ex rel. v. Stephens, 146 Mo. 662, 683, the court, after deciding the tax there questioned of two per cent on the value of railway cars used in this State during a year by companies other than railway companies, was a property tax, considered whether it violated Section 8, Article X, of the Constitution, and held that as the two-per-cent levy would take two dollars out of every hundred dollars worth of cars, it exceeded by one dollar and eighty-five cents the constitutional rate of fifteen cents on the hundred dollars of value. The decision is not upon the precise contention made for the city, because the car tax was levied uniformly

throughout the State; but the reasoning of the opinion, like that of all others bearing upon the point, is that in no instance of taxation can the General Assembly go beyond the limit named in Section 8, Article X.

However that may be, it is certain the Legislature had no intention, either to levy or empower the city to levy the tax in question as a state tax laid to meet an item of expense incurred by the state government; otherwise, the expense would not have been imposed on the next annual revenues of Kansas City. That the effect of the statute is neither to lay a special tax for the police department, nor authorize one to be laid, was decided, in effect, in State ex rel. Reynolds v. Jost. The case of State ex rel. v. Field, 119 Mo. 593, 611, et seq., cited for the city in favor of its contention that if the police tax is for a state purpose, it is constitutional, did not decide nor intimate that the Legislature could levy, or authorize the levy of a special tax for state purposes, in excess of the rate prescribed in Section 8 of Article X; but only decided the Legislature could impose on a municipality the cost of some state institution which specially benefited the locality, and that to raise the needed money could empower a municipality, acting as agent of the State, to levy a tax to pay the cost (loc. cit. 613). Other cases cited for defendants are: Rauch v. Chapman, 16 Wash. 568; Gladwin v. Ames, 30 Wash. 608; Grant v. Davenport, 36 Iowa, 396. The Iowa case is not apposite, and the two from the State of Washington adhere to the doctrine that a county debt incurred beyond the income and revenue provided for a year, is nevertheless not invalid under a constitution prohibiting debts to be incurred above said limit, if it was required for the maintenance of a means to carry out the fundamental purposes of government, like the courts, policemen, etc. The doctrine was announced in Potter v. Douglas Co., 87 Mo. 239, and abjured in Barnard & Co. v. Knox County, 105 Mo. 382, and in State ex rel. Hill v. Railroad, 169 Mo. 563, and probably in other decisions.

The plea is made that as the Legislature laid on the city the obligation. to defray the expense of the police department, and as money to do that can only be obtained by means of a new tax, the full revenue realized from the ten-mills levy being required to defray the ordinary city expenditures, the power to lay a new tax went with the obligation as an incident to it and *ex necessitate.* The asserted power did not go as an incident of the burden put on the city, for the reason stated heretofore, that the statutes say the burden shall be carried by the annual revenues paid into the city treasury.

Whether an apportionment of funds can be arranged between the city officials and the police board, which will suffice to maintain an efficient police department without impeding the municipality in the performance of its proper functions, we know not; but hope and believe it can be. At all events, the need of the city for more revenue, however great it may be, cannot justify the levy of an unauthorized or unconstitutional tax.

The judgment is affirmed. All concur, except *Woodson, J.,* absent.