STATE ex rel. ARNOLD, Relator, v. LICHTA et al., Respondents.

**St Louis Court of Appeals, March 31, 1908.**

1. **CERTIORARI: Appellate Practice: Rule of Court.** The Court of Appeals has no rule in respect to the issuance or non-issuance of writs of certiorari and where such writ has been issued and return made thereon the court will proceed to dispose of the cause on its merits.

2. **COUNTY COURTS: Dramshop License: Ministerial Function: Revocation of License.** A county court in revoking the license of a dramshop keeper on the charge that he does not at all times keep an orderly house, does not exercise a judicial but an administrative function.

3. **————: ————: Judicial Function.** But, in determining whether or not it had jurisdiction to entertain charges against a dramshop keeper for keeping a disorderly house and to revoke his license, the county court exercised a judicial function.

4. **————: ————: ————: Certiorari.** A county court, in determining whether a dramshop keeper has done acts which entitle it to revoke his license, acts in the exercise of its function as a court of record, and its action is subject to review by a writ of certiorari, if it revokes a license without jurisdiction to do so for the cause alleged, or if it exceeds its jurisdiction in doing so.

5. **DRAMSHOP KEEPER: Disorderly House: Selling Liquor to Minors.** A disorderly house is any house to which people resort to the disturbance of people lawfully within the place, as a house used or resorted to for illegal or immoral purposes; a single sale or gift of intoxicating liquor to minors is not a violation of section 3012, Revised Statutes 1899, requiring a dramshop keeper to keep "at all times an orderly house."

6. ————: ————: ————: **Forfeiture of License.** While the license of a dramshop keeper may be forfeited for failure to keep an orderly house as provided in section 3012, Revised Statute 1899, there is no provision authorizing the county court to revoke his license for selling or giving away liquor to minors in violation of sections 2995 and 3009, Revised Statutes 1899.

7. ————: ————: ————: ————. Although in granting a license to a dramshop keeper the State enters no contractual relation with him and he has no property interest in his license, nevertheless the power of a county court to revoke a license is controlled by statute just as its power to grant a license is, and it cannot revoke a license except upon conditions prescribed by statute.

Original petition for writ of certiorari in proceeding to revoke dramshop license.

ORDER OF COUNTY COURT REVOKING LICENSE SET ASIDE.

*E. P. Rosenberger*, Prosecuting Attorney of Montgomery County, Missouri, for respondents; *H. W. Johnson* of counsel.

*Ball & Ball* for relator.

STATEMENT.—On February 4, 1908, the county court of Montgomery county granted to relator, W. H. Arnold, a license to keep a dramshop on lot 7, block 5, in the city of Wellsville, in said county, for a period of six months. Relator paid the license tax, gave the statutory bond and otherwise complied with the dramshop act and received his license, and on February 8, 1908, was conducting a dramshop under his license. On the twenty-first of the same month Albert Stuck made

affidavit before E. P. Rosenberger, notary public, to the effect, that he was nineteen years of age on January 24, 1908, and that on or about February eighth of the same year, in company with Albert Peery, he went into relator's dramshop, and William Dixon, bartender for relator, served affiant and Peery each with a drink of whisky, and that Peery at the time was twenty years of age. Using this affidavit as a foundation, L. Nutter and five other citizens of Wellsville filed a petition in the county court, charging relator with having unlawfully sold and given away intoxicating liquors, on February 8, 1908, to Albert Stuck, a minor, and also to Albert Peery, a minor, and charged that relator had suffered intoxicating liquors to be dispensed in his dramshop to said minors, and prayed that relator's license as a dramshop keeper be revoked for thus violating the law prohibiting a dramshop keeper from selling or giving away intoxicating liquor to any minor. On the filing of the petition a summons, accompanied by a copy of the petition, was issued out of the county court, commanding the relator to appear before said court on the eleventh day of March, 1908, to answer the complaint filed against him and show cause, if any he had, why his license as a dramshop keeper should not be revoked. Relator appeared before the county court and filed his return to the petition.

The return or answer states, in substance, that relator at no time sold or gave away any intoxicating liquors to Stuck or Peery, and that he gave his bartender express and implicit orders not to sell intoxicating liquors to minors, nor to permit the same to be done on his premises, and not to permit minors to visit or remain in his dramshop; that if the bartender furnished intoxicating liquor to any minor or minors it was against relator's instructions and contrary to his will, denied that the bartender furnished any liquor whatever to Stuck or Peery, and alleged that relator had

posted inside and outside his dramshop a printed sign
having the inscription, "No minors will be served and
are not allowed in my saloon." For further return
relator alleged that the allegations of the complaint
stated no cause, under the law, authorizing the county
court to revoke his dramshop license, and alleged that
the county court had no jurisdiction to revoke his li-
cense for the offense alleged in the petition. The
county court heard the evidence and found that "Wil-
liam H. Arnold, at and in the county of Montgomery
and State of Missouri, being then and there a licensed
dramshop keeper as aforesaid, on the eighth day of·
February, 1908, did then and there unlawfully and
knowingly sell, give away and otherwise dispose of and
suffer the same to be done about his premises certain
intoxicating liquor, to-wit: one gill of whisky unto one
Albert Stuck; and unto one Albert Peery, both minors
and under the age of twenty-one years, and contrary to
the provisions of the statutes of the State of Missouri.
And the court doth further find the aforesaid William
H. Arnold guilty in manner and form as charged in
the specifications and that he has not at all times kept
an orderly house." On this finding the court entered
an order or judgment revoking Arnold's dramshop li-
cense, the order to take effect at eleven o'clock p. m.,
on Saturday, March 28, 1908, and taxed the
cost of the proceedings against Arnold. Arnold filed
an unavailing motion to set aside the order revoking
his license. On March 16, 1908, Arnold presented his
petition to one of the judges of this court, praying that
a writ of certiorari be issued, directed to the judges
of the county court of said Montgomery county, com-
manding them to certify to this court a full and com-
plete transcript of the record of the proceedings in the
Arnold matter and to show cause, if any they had, why
such proceedings should not be reversed and set aside.
The writ was duly issued and served upon respondents,

who have filed a full and complete transcript of the proceedings (a summary of which is stated above). With their return respondents filed a motion containing fifteen grounds for a dismissal of the proceedings. The cause has been ably and exhaustively argued by counsel representing both sides and submitted to the court for its decision.

BLAND, P. J. (after stating the facts).—1. Respondents' first point is that the writ was improvidently issued, in that it was issued contrary to the usual practice of the court to deny the issuance of extraordinary writs, unless there is some special reason therefor. Suffice it to say that this court has no rule in respect to the issuance or non-issuance of writs in cases of this character, and the writ having been issued and a return made thereto, the court is put in possession of the case and should not halt at this stage of the proceedings and dismiss the cause but should proceed to dispose of the case on its merits.

2. The second point made by respondents is that the act of the county court in revoking relator's license was a ministerial or administrative act, non-judicial in its nature, and for this reason the writ of certiorari will not lie. In Barnett v. County Court, 111 Mo. App. 693, 86 S. W. 575, Barnett's license as a dramshop keeper was revoked by the county court of Pemiscot county, on the ground that Barnett had not at all times kept an orderly house. Barnett filed an affidavit for an appeal from the order of the county court to the circuit court. The county court refused to grant the appeal, and Barnett sued out of this court an alternative writ of mandamus directed to the justices of the county court, commanding them to allow the appeal or show cause. Cause was shown and NORTONI, J., writing the opinion for this court, held that the order of the county court revoking Barnett's license was not such a judg-

ment as could be appealed from, under the statutes of
this State regulating appeals from county courts to
circuit courts, on the ground, first, that no appeal is
given by the dramshop act from an order of the county
court revoking a dramshop keeper's license for keeping
a disorderly house and, second, that an appeal does not
lie under the general statutes allowing appeals from
county courts to the circuit courts, for the reason there
is no contractual relation between the State and the
licensee; that the latter has no property in the license,
which is a mere permit, subject to revocation by the
power that granted it, and there being no property
rights involved, there is nothing calling for the exercise
of any judicial function by the county court in revoking
the license; and that in the proceedings the county
court did not act in a judicial capacity but in the ca-
pacity of an excise board, as the agent of the State, in
a ministerial or administrative capacity, exercising the
police powers enforcing police regulations of the State.
The Barnett case is approvingly cited and followed in
the case of State v. Seebold, 192 Mo. l. c. 729, 91 S. W.
491, and in the case of State v. Kirk, 112 Mo. App.
447, 86 S. W. 1099. This doctrine is supported by the
authorities cited in the Barnett and Seebold cases and
also by the case of Higgins v. Talty, 157 Mo. 280, 57
S. W. 724. It may therefore be accepted as settled law,
that a county court in revoking the license of a dram-
shop keeper, on the charge of not at all times keeping
an orderly house, does not exercise any judicial func-
tion. But in determining whether or not the charges
against relator brought the case within its jurisdiction
to revoke his license, the county court exercised judi-
cial power, and if in the exercise of this function, the
court stepped outside the bounds of its jurisdiction to
take cognizance of the charges, certiorari will lie.
[State ex rel. Ellis v. Elkin, 130 Mo. 90, 30 S. W. 333,

130 App.—19

31 S. W. 1037; State ex rel. v. Guinotte, 156 Mo. 513, 51 S. W. 281; 4 Ency. of Plead. & Prac., p. 38; 23 Am. and Eng. Ency. of Law (2 Ed.), 230.]

In 4 Ency. Plead. and Prac., p. 10, it is said: "In its office the writ of certiorari is confined to reviewing the proceedings of inferior boards, officers, or tribunals which proceed in a summary manner and not according to the course of the common law, and where there is no other remedy provided by statute. By such writ (certiorari) inferior judicatories are kept within the bounds of their jurisdiction, and may be required, where their actions are erroneous or illegal, to certify the record of such proceedings to the superior court to be reviewed."

In State ex rel. v. Dowling, 50 Mo. 1. c. 136, BLISS, J., quoting from Judge SAVAGE, in Starr v. Trustees, etc., 6 Wend. 567, said: "It may be said that these plaintiffs have their remedy by action, therefore certiorari will not lie. Where there is no jurisdiction there is a remedy by action, but that does not deprive this court of jurisdiction, nor prevent a party injured from pursuing this remedy."

In State ex rel. v. Shelton, 154 Mo. 1. c. 691, BRACE, J., said: "Now, while certiorari is the appropriate remedy where an inferior tribunal acts without jurisdiction or in excess of its jurisdiction, or when within its jurisdiction, but the action of such inferior tribunal cannot be reviewed on appeal or writ of error (State ex rel. v. Stephens, 146 Mo. 662, 48 S. W. 929; State ex rel. v. Switzler, 143 Mo. 287, 45 S. W. 245; State ex rel. v. Harrison, 141 Mo. 12, 41 S. W. 971, 43 S. W. 867; State ex rel. v. Madison Co. Court, 136 Mo. 323, 37 S. W. 1126; State ex rel. v. Dobson, 135 Mo. 1, 36 S. W. 238; State ex rel. v. Slover, 113 Mo. 202, 20 S. W. 788; Railroad v. Young, 96 Mo. 39, 8 S. W. 776; Han. & St. Joe Ry. Co. v. State Board of Equalization, 64 Mo. 294; Snoddy v. County of Pettis, 45 Mo. 361; Rector v. Price, 1 Mo. 198); yet in this State the law

is also well settled that it cannot be used as a substitute for appeal or writ of error; and that, where such tribunal has jurisdiction and its action can be reviewed by appeal or writ of error, certiorari will not lie."

In State ex rel. v. Smith, 176 Mo. 99, 100, 75 S. W. 586, Fox, J., said: "This writ may be resorted to, not only in cases where it is alleged that the lower court is absolutely without any jurisdiction whatever; but it also may reach, and afford a remedy, in cases where such court has jurisdiction, but undertakes to exercise unauthorized powers. This principle was very clearly announced by Judge BLACK in State ex rel. Dawson v. St. Louis Ct. of App., 99 Mo. l. c. 221, 12 S. W. 661, where it is said: 'But it cannot be said that the writ will be issued only in those cases where the lower court has no jurisdiction whatever over the case before it.' High says: 'The province of the writ is not necessarily confined to cases where the subordinate court is absolutely devoid of jurisdiction, but is also extended to cases where such tribunal, although rightfully entertaining jurisdiction of the subject-matter in controversy, has exceeded its legitimate powers.'"

Now, while the county court, in revoking a dramshop license, acts as the administrative agent of the State, nevertheless it is a constitutional court and acts in its character as a court of record, and cannot divest itself of that character by the mere fact, that the function exercised at the time is a ministerial or administrative function. Therefore, its action is subject to review, if it had no jurisdiction to revoke relator's license for the cause alleged, or if it exceeded its jurisdiction.

The petition against relator was filed by citizens, who are expressly authorized by statute to make such a complaint, and charged a violation of section 3009, of the dramshop act, and is bottomed on the affidavit of Albert Stuck, and the only charge is that relator

violated the dramshop act by furnishing whisky to minors in his dramshop on one occasion. On finding him guilty of this charge, the court found that relator had not at all times kept an orderly house and by this finding undertook to bring the case within the provisions of section 3012, which expressly authorizes the county court to revoke the license of a dramshop keeper, who does not at all times keep an orderly house; in other words, the court found as a matter of law that a dramshop keeper, who, on a single occasion, furnished intoxicating liquor to two minors, is guilty of not at all times keeping an orderly house, and counsel for, respondents argued at great length in support of the soundness of this ruling. A disorderly house has been judicially defined to be a house kept in such a way as to disturb, annoy or scandalize the public generally, the inhabitants of the particular vicinity, or the passers-by in a particular highway. [State v. Wilson, 93 N. C. l. c. 609, citing 2 Whar. Crim. Law, sec. 2392.]

In Commonwealth v. Bessler, 97 Ky. 498, it was held: "The offense of keeping a disorderly house consists of a repetition of improper conduct, and to constitute a good indictment for that offense words must be used which show the repetition or frequency of the acts complained of, as that the acts were done on a day certain 'and on divers other days and times,' etc. It is not sufficient to allege that the acts were done (on the —— days of ——, 1894, and before the finding of the indictment." [See also Hawkins v. Lutton, 95 Wis. 492.]

In State v. Maxwell, 33 Conn. 259, the common law definition of a disorderly house is given as "a house the inmates of which behave so badly as to become a nuisance to the neighborhood." To this definition we add this: A disorderly house is any house to which people resort to the disturbance of people lawfully within the place; a house used or resorted to for the

purpose of gaming, prostitution, or other illegal or immoral purposes.    [1 Bishop's New Crim. Law, sec. 1106; Price v. State, 96 Ala. 1; Overman v. State, 88 Ind. l. c. 8; State v. Grosofski, 89 Minn. l. c. 345.] Open, repeated and continuous sales of intoxicating liquors to minors, to the annoyance and disturbance of the inhabitants of the vicinity, might come within the legal definition of a disorderly house; but a single sale or gift of intoxicating liquor to two minors, one twenty and the other nineteen years old, by a dramshop keeper, falls far short of bringing his house or place of business within the legal definition of a disorderly house.    Therefore, the county court was without authority to revoke relator's license under the provisions of section 3012, of the dramshop act, which expressly provides that "whenever it shall be shown to the county court, upon the application of any person, that any dramshop keeper of the county has not at all times kept an orderly house, such court shall order the license of such dramshop keeper to be revoked," etc.    One of the conditions of the bond required to be given by a dramshop keeper is, that he shall at all times keep an orderly house and that he will not sell, give away or otherwise dispose of, or suffer the same to be done about his premises, any liquor· in any quantity to any minor. [Sec. 2995, Ann. Stat., 1906.]    The penalty for selling liquor to a minor is a forfeit of $50 to the parent or guardian of such minor, to be recovered by civil action on the bond of the dramshop keeper, and in addition to the civil liability the statute provides that such dramshop keeper shall be deemed guilty of misdemeanor and be punished by a fine of not less than $40 or more that $200. [Sec. 3009, of the Dramshop Act.]    While perhaps there should be, there is no provision whatever in the dramshop act for the forfeiture of the dramshop keeper's license for a violation of section 3009, by selling or giving away intoxicating liquor to a minor.    On convic-

tion of keeping his dramshop open on Sunday, or of selling or giving away, or otherwise disposing of intoxicating liquor on Sunday, the dramshop keeper is subject to a fine of not less than $50 or more than $200, and a forfeiture of his license, and is disqualified to keep a dramshop for two years thereafter. Section 3018, of the dramshop act, prohibits a dramshop keeper from keeping or exhibiting, etc., any piano, organ or other musical instrument whatever, for the purpose of performing upon or having the same performed upon in his dramshop. He is also prohibited from setting up any billiard table, etc., in his dramshop, or in any building used in connection therewith. A violation of the provisions of this section is made a misdemeanor punishable on conviction by a fine and forfeiture of his license. No other sections are to be found in the act providing for a forfeiture of license. As stated above, section 3012 is the only section of the act expressly conferring the power on county courts to revoke dramshop license. In cities of two hundred thousand inhabitants or over, the excise commissioner in such cities, by section 3021, Ann. Stat., 1906, is given the broad power to revoke a dramshop keeper's license for any violation of the dramshop act. For the reason this broad power is given to the excise commissioners and not to the county courts, it was contended in the Seebold case that the excise law was unconstitutional. The court noted the difference in the powers respectively granted but, quoting from Black on Intoxicating Liquors, sec. 189, said: "A license to sell liquor is neither a contract nor a right of property, within the legal and constitutional meaning of those terms. It is no more than a temporary permit to do that which would otherwise be unlawful, and forms a part of the internal police system of the State. Hence the authority which granted the license always retains the power to revoke it, either for cause of forfeiture, or upon a

change of policy and legislation in regard to the liquor traffic. And such revocation cannot be pronounced unconstitutional, either as an impairment of contract obligation, or as unlawfully divesting persons of their property or rights." For the reason the State enters into no contractual relation with the dramshop keeper by granting him a dramshop license and accepting the license fee, and for the reason the dramshop keeper has no property interest in the license, and for the reason the licensee is bound to submit to such police regulations in respect to the sale of intoxicating liquors, as the Legislature of the State has prescribed, it is contended by respondents that any violation of such regulations works a forfeiture of the license and that the power to revoke goes with and is incidental to the power to grant the license. In support of this position the Seebold and other cases arising under the excise laws are cited; also a case from Virginia and one from Kentucky, where, under statutes, express power is conferred on county authorities to revoke a dramshop license for any violation of the dramshop laws of these States. None of these cases are in point, for the reason they are decided upon statutes not found in the dramshop act of this State, so far as county courts are concerned. The scheme of granting a dramshop license and of regulating dramshops is purely statutory, the statutes having been enacted in the exercise of the internal police powers of the State. The power of the county courts to grant such license is not an inherent power of the court but a power expressly granted to it by the Legislature, to be exercised, however, only in the manner and upon the conditions pointed out by the statute, so that regulations apply as well to the county court as to the dramshop keeper and both should be kept within the bounds prescribed by the law. The county court is without authority to grant a dramshop license except in the manner and on the condi-

tions prescribed by statute; it is equally without power to revoke a license for any cause other than that the dramshop keeper has not at all times kept an orderly house. The petition to the county court failed to state that relator had not at all times kept an orderly house, and the facts found by the county court are insufficient to convict him of that offense. Therefore, we think the county court overstepped the bounds of its jurisdiction when it found relator guilty of keeping a disorderly house by making a single sale or gift of intoxicating liquor to Stuck and Peery, and on this ground alone revoked his license.

Wherefore, it is considered by the court that the order and judgment of the county court of Montgomery county, revoking relator's dramshop license, be and the same is hereby set aside and for naught held. All concur.