## JOHN LYNCH v. JAMES BRENNAN AND ANOTHER.[1]

### November 12, 1915.

### Nos. 19,455—(99).

**Intoxicating liquor — bond of saloonkeeper.**

1. Under chapter 246, Laws 1905 (G. S. 1913, § 3117), both the principal and surety on a saloonkeeper's bond are liable for any damage proximately caused by any act which is a violation of the conditions of the bond.

**Same — violation of condition.**

2. Where the person in charge of a saloon pours alcohol upon a guest and then sets fire to him, there is a violation of the condition of the bond that the licensee will keep a quiet and orderly house.

**Same.**

3. It is not necessary to a violation of this condition that the licensee shall be guilty of the statutory crime of keeping a "disorderly house." That crime involves habitual or repeated acts of disorder, not necessary to a breach of the bond.

**Limitation of action.**

4. The six-year limitation of actions applies to a cause of action on such a bond.

Action in the district court for Koochiching county against James Brennan and the American Surety Company of New York to recover $2,-000 for personal injury received while in defendant Brennan's saloon for the sale of intoxicating liquors, in violation of the provisions of the liquor license bond and the laws of the state. From orders overruling separate demurrers of defendants, McClenahan, J., defendants took separate appeals. Affirmed.

*Kane & Palmer, Kerr, Fowler, Ware & Furber* and *George S. Langland,* for appellants.

*Montague & Montague,* for respondent.

[1] Reported in 154 N. W. 795.

Note.—As to liability, at common law, of a saloonkeeper for personal injury to patron, see note in 4 L.R.A.(N.S.) 649.

As to liability for malicious acts of servants toward patrons, see note in 4 L.R.A.(N.S.) 485.

HALLAM, J.

1. Defendant Brennan is a saloonkeeper at Ranier, Minnesota. He gave the usual statutory bond to keep his saloon closed on the Sabbath and to "keep a quiet and orderly house." Defendant American Surety Company is surety on the bond. Plaintiff alleges in his complaint that on Sunday, June 4, 1911, Brennan kept his saloon open and sold liquor therein; that on that day William Tracy was in charge of the saloon, as bartender, employed by Brennan; that while plaintiff was quietly sitting in the saloon as a guest, Tracy poured alcohol upon his foot and into his shoe and then set fire to the alcohol, and that thereby plaintiff was severely burned. Defendants demurred separately on the ground that the complaint fails to state a cause of action. Both demurrers were overruled and defendants separately appeal.

There can be no question that the facts alleged are sufficient to charge defendant Brennan with liability at common law. Curran v. Olson, 88 Minn. 307, 92 N. W. 1124, 60 L.R.A. 733, 97 Am. St. 517.

The liability of defendant surety company is a different matter. Its liability, if any exists, is contractual and is predicated upon its bond. The bond must be construed in connection with the statutes which prescribe the terms to be contained in the bond and prescribe its scope and effect. There are two such statutory provisions.

G. S. 1913, §§ 3155 and 3200, give a right of action to certain persons for injuries caused by persons intoxicated by liquor illegally sold. There is no liability under these sections in this case, because there is no allegation that the bartender who caused the injury was intoxicated.

The other statute, and the one on which liability is predicated, is now embodied in G. S. 1913, §§ 3116 and 3117. These sections prescribe the conditions of the bond and determine its general scope and effect. Before going further into this statute it may be instructive to look to the history of legislation on this subject.

The requirements of a saloonkeeper's bond originated with the first territorial legislature, in 1849. It was enacted that any person wishing to obtain a license to keep "a grocery" should execute a bond to the county board, "conditioned that he will keep an orderly house and that he will not permit any unlawful gaming or riotous conduct in or about his house," and for violation of the conditions of the bond a fine was im-

posed, to be recovered in an action of debt for the use of the county (Laws 1849, p. 43, c. 8, § 1), and certain public officers were charged with the duty of prosecuting the bond for violation of the conditions. Id. p. 44, § 7.

In 1855 other conditions were added to the bond, among them a condition that no sale of liquor should be made on the Sabbath. Laws 1855, p. 127, c. 48, § 2. See also Laws 1858, p. 186, c. 74, § 2; G. S. 1866, c. 16, § 2. And there was also added a provision that "every license * * * shall cease to be in force from and after any violation of any of the conditions of the bond * * * shall have been proved before any court having competent jurisdiction" and that "thereafter the person or persons who may have so violated the conditions of said bond shall be held liable * * * for all damages done by persons intoxicated by * * * liquors obtained from them." Laws 1855, p. 127, c. 48, § 6; Laws 1858, p. 187, c. 74, § 5; G. S. 1866, c. 16, § 3.

In 1872 this last section was amended by adding this provision: "And the sureties on said bond shall be jointly and severally liable * * * for the payment of said damages, to be recovered in a civil action." Laws 1872, p. 184, c. 61, § 2; G. S. 1878, c. 16, § 3; G. S. 1894, § 1992. This provision was carried forward into Revised Laws 1905 as section 1540 (G. S. 1913, § 3155), and was somewhat amplified by Laws 1911, p. 221, c. 175, above cited as G. S. 1913, § 3200.

In the meantime the general provisions prescribing the form of bond to be exacted were carried forward through Laws 1858, p 186, c. 74, § 2; G. S. 1866, c. 16, § 2; G. S. 1878, c. 16, § 2; Laws 1887, p. 41, c. 6, § 1; G. S. 1894, § 2026; R. L. 1905, § 1524, with some changes, but none that are material here, until the enactment of Laws 1905, p. 379, c. 246. That act added the following significant provisions:

."Such licensee shall be liable upon his * * * said bond whether his said license has been revoked or not.

"The surety or sureties on any such bond shall be liable for any damage or injury caused by or resulting from the violation of any of the conditions thereof in any and all cases where the principal upon such bond may be liable." This provision is in G. S. 1913, § 3117, and it is now the law of this state.

From this legislation it would appear that the bond provided in the earliest statutes was one for the benefit of the public and suable only by the public authorities; that as early as 1855, however, the principal was made liable to suit by private parties for damages done them by persons intoxicated by certain illegal sales of liquors, and that the sureties on the bond have been so liable, if not since 1855, then at least since 1872.

We are of the opinion that under the act of 1905, above quoted, both the principal and the surety on a saloonkeeper's bond are further liable for any damage proximately caused by any act which is "a violation of any of the conditions of the bond."

2. The next question is whether the act of the bartender, which caused plaintiff's injury, was a "violation of any of the conditions of the bond." We think it was clearly a violation of the stipulation that "said James Brennan will keep a quiet and orderly house." No argument should be required to sustain the proposition that when a bartender in charge of a saloon deliberately soaks a guest with an inflammable fluid and then deliberately sets fire to him, he is not keeping "a quiet and orderly house," as such language is ordinarily understood.

3. It is contended, however, that the words, "quiet and orderly house," have acquired a technical meaning in the law, that they are the converse of the term "disorderly house," as that term is defined and understood in criminal law, and since the crime of keeping a "disorderly house" is only committed by repeated and habitual acts of disorder (G. S. 1913, § 8712, State v. Reckards, 21 Minn. 47), it is argued that there is no violation of this bond, unless the principal by repeated acts or omissions habitually keeps a "disorderly house."

We think this contention cannot be sustained. The rules of criminal law are not applicable here. The penal law concerns itself only with public offenses, and under it a house becomes "disorderly" only when it becomes a common or public nuisance. Hunter v. Com. 2 Serg. & R. (Pa.) 298. There is reason for the rule that this should require more than a single act of disorder. The statute and bond we are now considering concern private, as well as public, wrongs. There is no reason why we should take the words of the statute or of the bond in other than their natural and ordinary meaning. We should not hold that a wrong arising from a plain act of disorder is not complete, because there are not other

acts of disorder either causing a repetition of the wrong, or else not concerning this plaintiff at all. We are impressed with the rule adopted and the reasons given in People v. Eckman, 63 Hun, 209, 18 N. Y. Supp. 654. This was an action by the public authorities upon a saloonkeeper's bond conditioned, among other things, that the principal should not "suffer his place to be disorderly." The language of Justice Morgan J. O'Brien is very pertinent here. He says [p. 216]:

"One of the conditions (of the bond) * * * is that the obligor will not suffer his place of business to become disorderly. In determining the construction or meaning to be given to the word 'disorderly,' it will not do to resort to the Penal Code, as claimed by appellants, and take the definition therein given as to what would constitute a disorderly house. As defined by Webster, it means 'not regulated by the restraints of morality; not complying with the restraints of order and law.' This definition, coupled with the one given by Bishop on Criminal Law, in defining what is meant by disorderly inns, etc. (§§ 1111, 1119), goes far to support the contention that the sale of intoxicating liquor to a minor under fourteen years of age is a disorderly act, and a breach of the condition of the bond. Moreover, as all the questions raised upon this appeal have been examined in the cases of The People, etc. v. Burget and The Board of Excise v. Detterlien, (Manuscript Opinions, filed December 9, 1889) and determined adversely to appellants, further discussion is unnecessary. We think the conclusions reached in those cases were correct."

We find but few other authorities that are helpful. Iowa and Massachusetts cases hold that even in a criminal prosecution where statutes explicitly provide that certain acts of disorder are a common nuisance, a single instance of disorder is sufficient.

In Iowa it was held that under a statute which expressly provided that "houses where drunkenness, quarreling, fighting, or breaches of the peace are carried on or permitted, to the disturbance of others, are nuisances," the defendant might be convicted on proof that he permitted the occurrence of the inhibited acts on but one occasion. State v. Pierce, 65 Iowa, 85, 21 N. W. 195.

In Massachusetts, in prosecuting under a statute which specificially provides that "all buildings, places, or tenements, * * * used for the illegal keeping or sale of intoxicating liquors, shall be deemed common

nuisances," and imposing a penalty upon one who keeps or maintains such common nuisance, it is held that "this offense may be committed by a violation of the statute on a single occasion." Commonwealth v. Cogan, 107 Mass. 212; Commonwealth v. Gallagher, 1 Allen, 592.

On the other hand, in State v. Lichta, 130 Mo. App. 284, 109 S. W. 825, cited by defendants, it was held that in a proceeding to revoke a liquor license for violation of a statute which makes a ground of revocation that the holder "has not at all times kept an orderly house," a sale of liquor to two minors on a single occasion was not a violation of the statute. That statute concerns only public offenses, and there may have been ground for following the analogy of the penal laws.

4. It is urged that the action is barred by the two years statutory limitation. G. S. 1913, § 7703, subd. 1, which provides that action "for libel, slander, assault, battery, false imprisonment or other tort resulting in personal injury," shall be commenced within two years. The action of the bartender was undoubtedly an assault. The tort was also a breach of contract. Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793, 47 L.R.A. (N.S.) 183; Cullinan v. Burkard, 93 App. Div. 31, 86 N. Y. Supp. 1003. When the action is on the contract for breach thereof, the six-year limitation applicable to actions on contract applies. This is such an action. The six-year limitation has not run and the action is not barred.

Order affirmed.