ELLA MAE MURPHY AND ANOTHER v. JOSEPH H. HENNEN, d. b. a. THE MIDDLE BAR, AND ANOTHER.

119 N. W. (2d) 489.

January 25, 1963—Nos. 38,685, 38,686.

458

*Robert William Rischmiller* and *Quigley, Quigley & Murphy,* for appellant.

*Atwood & Fletcher,* for respondent Murphy.

*Ahles & Ahles,* for respondent Philippi.

ROGOSHESKE, JUSTICE.

After verdicts for plaintiffs in actions consolidated for trial, defendant appeals from an order denying his motion for judgment notwithstanding the verdicts or for a new trial.

Plaintiffs sued to recover under the Civil Damage Act, Minn. St. 340.95.

The essential issues for review are: Whether the evidence sustains the verdicts; whether the sale of an intoxicant to a minor can constitute a proximate cause under § 340.95 where said intoxicant is later consumed by an adult legally entitled to be served the intoxicant; and whether the opinion of a police officer as to the point of impact of a collision is admissible over objection.

The testimony shows that plaintiff Elizabeth Philippi was a passenger in a car driven by Phyllis Murphy, daughter of plaintiff Ella Mae Murphy. On Saturday, September 19, 1959, at about 9:30 p. m., a car driven by Elmer Miller collided head on with the Murphy automobile while it was being driven on its side of the highway. The collision occurred on State Aid Road No. 21, a short distance south of the village of Cold Spring, Minnesota. As a result, Phyllis Murphy and Elmer Miller were instantly killed and Elizabeth Philippi sustained personal injuries. There were no eyewitnesses to the actual collision.

The jury could further find that Elmer Miller (age 24), his cousin Harold Miller (a 20-year-old minor), and Kenneth Hennen (an adult) met in Cold Spring at the Hennen Motor Company and decided to go with Kenneth to Milaca where he had a dental appointment; that they arrived at Milaca about 11:30 a. m. and, while Kenneth was at the dentist's office, Elmer and Harold had at least one 12-ounce bottle of strong beer in the Milaca Municipal Liquor Store; that after leaving Milaca, these young men went to St. Cloud where they ate a noon meal at a hamburger shop; about 2 p. m. they stopped at an automotive store to check the progress of seat covers being put on Kenneth's automobile; and about 2:30 p. m., Elmer, together with his companions, had at least two 8-ounce glasses of 3.2 beer at a tavern in St. Cloud; that after leaving St. Cloud, until they left defendant's bar located in the village of Cold Spring at about 9 or 9:15 p. m., they continued their drinking of intoxicating liquors from one bar to another; that from St. Cloud they went to Cold Spring, then to Richmond, and returned to Cold Spring; that at Richmond they had more than two 12-ounce bottles of strong beer between 4 and 6 p. m.; that at Cold Spring they visited an establishment known as

the Side Bar,[1] after which they went to defendant's bar where they stayed from about 6:30 p. m. to 9:15 p. m. The evidence further shows that, while they were in defendant's bar, decedent Elmer Miller drank more than the admitted three 12-ounce bottles of strong beer and that each of the young men paid for an unknown number of rounds of drinks following their custom during the day of buying drinks for each other; that when they left defendant's bar Elmer and Harold, each in his own car, proceeded in a southerly direction on State Aid Road No. 21, Harold following Elmer to the edge of town where he lost sight of him; that about a quarter of a mile and only minutes before the collision with the Murphy automobile, Elmer's automobile sideswiped another car driven by a Mr. Klehr and continued on. Harold was the first one to come upon the scene of the collision.

At the trial two law-enforcement officers, who were at the scene shortly after the collision, were allowed to express their opinions as to the actual point of impact. This testimony was received over the objection of defendant.

Plaintiffs brought suit under § 340.95. Each claims that the collision resulted from Elmer Miller's intoxication and that defendant unlawfully sold intoxicating liquor to Elmer Miller when he was obviously intoxicated and sold intoxicating liquor to Harold Miller, who was a minor and who, in turn, furnished such liquor to Elmer, contributing to Elmer's intoxication.

1. The claims asserted under § 340.95 must be sustained if the evidence is sufficient to permit a finding (1) that defendant made one or more illegal sales of intoxicants; (2) that such illegal sale or sales proximately contributed to cause Elmer Miller's intoxication; and (3) that such intoxication was a proximate cause of the collision and resulting injury to Elizabeth Philippi and death of Phyllis Murphy.[2]

---

[1]The owner of this establishment was joined as a defendant in the case, as were Harold Miller and Kenneth Hennen. The action against the latter two was dismissed upon motion of plaintiffs, and the action against the owner of the Side Bar was dismissed by the court.

[2]Fest v. Olson, 138 Minn. 31, 163 N. W. 798; Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N. W. (2d) 794, 75 A. L. R. (2d) 459.

2-3. The fact that Elmer Miller was intoxicated at the time of the collision and that such intoxication was a proximate cause of the injury and death is sustained by the evidence. The evidence of Elmer Miller's intoxication at the time of the collision is clearly sufficient. It must be remembered that direct evidence of the extent of drinking was brought out by cross-examination of Harold Miller, an adverse party. His denial that he was intoxicated when he came upon the scene was directly contradicted by a disinterested witness who related facts which support his contradictory opinion. Considering, in addition, the length of time these young men were together and the nature of their activity, including Elmer's conduct immediately preceding the collision, it is not at all surprising that the jury did conclude, as they reasonably could, that the quantity and effect of Elmer's drinking was far greater than described or admitted by the testimony of his companions.

There is ample evidence from which the jury could find that Elmer Miller's intoxication caused the collision. The evidence, without the opinions—the admissibility of which is questioned on this appeal—, permitted the jury to find that the collision occurred because Elmer Miller drove his automobile upon the wrong side of the highway and into the Murphy car. The inference of intoxication as a cause is compelling when it is remembered that he sideswiped another car driving in the same direction as the Murphy car moments before the collision.

Defendant's primary challenge is directed at the sufficiency of the evidence to support the finding of an illegal sale. The illegal sale urged by plaintiffs was either a sale or furnishing of intoxicants to Elmer Miller when he was obviously intoxicated, or a sale to Harold Miller, a minor, who purchased intoxicants for his companion, Elmer Miller.

Upon the record there is sufficient evidence to sustain a finding that the intoxicants consumed on defendant's premises, whether sold to Elmer or Harold, contributed to Elmer Miller's intoxication. It is not disputed that Harold paid for intoxicants consumed by Elmer. A sale to a minor is illegal.[3] Where a minor consumes intoxicants in

---

[3]Minn. St. 340.73, subd. 1.

the company of others, and takes his turn in paying for rounds of intoxicants served, there is an illegal sale which gives rise to an action authorized by § 340.95. The illegality of such a sale is neither affected nor erased by the fact that the person for whom the minor purchases the intoxicant is a sober or an obviously intoxicated adult. If the adult consuming the intoxicant is obviously intoxicated at the time, two illegal acts occur—the illegal sale to the minor and furnishing liquor to an intoxicated person.[4]

Defendant argued at the trial and here that the illegal sale of an intoxicant to a minor should continue as a vehicle upon which liability may attach to the illegal seller only when the intoxicant is consumed by a person not legally entitled to be served. The court disagreed and instructed the jury that any sale by defendant to Harold Miller was an illegal sale, and permitted the jury to base liability either upon such sale to the minor or upon a finding that defendant sold or furnished liquor to Elmer Miller when he was obviously intoxicated. We believe the court's instructions correctly construed the applicable statutes. Our Civil Damage Act grants a right of action "against any person who, by illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person." We have held that in determining whether there has been an illegal sale we are governed by the language of statutes which declare specific sales to be illegal.[5] Both a sale to a minor and a sale to a person "obviously intoxicated" are declared to be illegal sales. Either type of prohibited sale was intended to give rise to a cause of action under § 340.95 if either contributed to the intoxication of a person and such intoxication was a proximate cause of injury or damage. Thus, if causation is established, any illegal sale or illegal furnishing, singly or in combination, can be the basis for liability under a strict construction of the plain language of the Civil Damage Act. These statutes are regulatory in nature.[6] If we were to adopt defendant's construction, the full prohibition in-

---

[4]Both furnishing and selling intoxicants to a person "obviously intoxicated" are made illegal by § 340.14, subd. 1.

[5]Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254.

[6]Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875; Hartwig v. Loyal Order of Moose, *supra.*

tended by the statutes would be narrowed and the accomplishment of their purpose restricted.

The question thus arises whether there was sufficient evidence to sustain a finding of either an illegal sale or furnishing of intoxicants to Elmer Miller independent of the illegal sale to the minor. Although no witness testified as to Elmer's conduct in defendant's bar, we believe other evidentiary facts and circumstances—especially the nature and extent of his drinking and his conduct upon leaving the bar—permitted the jury to reasonably infer that he was in fact obviously intoxicated when he was sold and furnished intoxicants in defendant's bar. The credibility of the witness Dold, who described the conduct of the boys upon leaving the bar, may have been impaired on cross-examination; but the weight and ultimate believability of his testimony were for the jury. A finding of intoxication and obvious intoxication does not require proof of any specified amount of drinking or of any degree of intoxication, but simply proof that, as a result of drinking intoxicants, a person has lost control to any extent of his mental or physical faculties and that such condition is, or should be, observable or apparent to the seller.[7] It must be conceded that the proof on this point was minimal and circumstantial, but we cannot hold that it was insufficient as a matter of law.

There remains the question whether the illegal sale or sales to the minor contributed proximately as a cause of Elmer Miller's intoxication as well as of the collision. We have held that intoxicants consumed as a result of illegal sales need not be the sole cause of intoxication. It is enough if such intoxicants combine with other intoxicants that may have been legally sold or furnished to be a concurring or proximately contributing cause.[8] It is conceivable that a lapse of time between an illegal sale to a minor and consumption of the intoxicants furnished by him to another, together with other variables, may negate causation as a matter of law.[9] This is not such a case. Upon this

---

[7]Hahn v. City of Ortonville, *supra*; Strand v. Village of Watson, 245 Minn. 414, 72 N. W. (2d) 609.

[8]Fest v. Olson, *supra*; Hahn v. City of Ortonville, *supra*.

[9]Cf. Swinfin v. Lowry, 37 Minn. 345, 34 N. W. 22.

record there was no appreciable lapse of time between the sale and consumption; and under the facts and circumstances shown we must hold that the jury was permitted to find causation and fix liability upon either an illegal sale to the minor or an illegal sale or furnishing of intoxicants to Elmer Miller, or upon a combination of both.

4. Defendant contends that the trial court erred in admitting the opinions of two police officers as to the point of impact of the collision. Defendant's objection is that the opinions invaded the province of the jury.

The admissibility of a claimed expert's opinion is within the discretion of the court, and any ruling will not be reversed unless there is an abuse of discretion which results in prejudice to the objector.[10] It is settled by our decisions that the opinion of a police officer as to the point of impact of a collision is not admissible because such opinion is usually not based on any special skill, learning, or experience but is simply the judgment of the officer based on facts or assumptions equally available to the jury in a field of knowledge and experience ordinarily possessed by persons of common intelligence.[11] The vice of admitting such testimony is that it permits the jury to substitute the opinion of the officer for the combined judgment of the jury, to which parties are entitled. Even though it may be rather common practice for adversaries to agree that such opinions be received, especially from experienced and dedicated traffic officers, the mischief in having the rule conform to the practice is that it encourages trial by experts rather than by witnesses, as pointed out by Mr. Chief Justice Knutson in Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692. Moreover, receiving such opinions fosters the loose practice of receiving (as was done in this case) opinions not based wholly upon facts or data perceived by, or personally known or made known to, the witness at trial, but also upon hearsay and instinct.[12] We, there-

---

[10]Carmody v. Aho, 251 Minn. 19, 86 N. W. (2d) 692; 2 Jones, Evidence (5 ed.) § 414; McCormick, Evidence, § 13.

[11]McNab v. Jeppesen, 258 Minn. 15, 102 N. W. (2d) 709; Beckman v. Schroeder, 224 Minn. 370, 28 N. W. (2d) 629.

[12]See Rule 56(2) of Uniform Rules of Evidence (1953), not yet adopted by our state.

fore, hold that it was error to receive these opinions. However, where, as here, the evidence presents no conflict on the issue, where the facts upon which the opinion was based are all before the jury, and where the inference is clear and compelling, the opinion expressed is superfluous. The jury could not have been misled, and the defendant has not shown prejudice.

Affirmed.

MR. JUSTICE MURPHY took no part in the consideration or decision of this case.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.