## ROBERT W. DAHL v. NORTHWESTERN NATIONAL BANK OF MINNEAPOLIS, EXECUTOR OF ESTATE OF PETER REVSBECH, AND ANOTHER.

121 N. W. (2d) 321.

April 11, 1963—No. 38,308.

*Rolland L. Thorson, Herbert Davis,* and *Carroll, Thorson, Anderson & Cronan,* for appellant.

*Howard S. Marker* and *Dorfman & Rudquist,* for respondent.

ROGOSHESKE, JUSTICE.

This is an appeal from an order determining that plaintiff's action for personal injuries arising under our Civil Damage Act,[1] popularly

---

[1]Minn. St. 340.95 provides: "Every husband, wife, child, parent, guardian, employer, or other person who is injured in person or property, or means of support, by any intoxicated person, or by the intoxication of any person, has a right of action, in his own name, against any person who, by

known as the Dram Shop Act, survives the dramshop operator.[2]

The only question presented is whether, pursuant to our survival-of-action statute, Minn. St. 573.01, such an action survives the person against whom it arose.

Plaintiff alleges that Peter Revsbech, owner and operator of the S. O. S. Bar, or his agents, made an illegal sale of intoxicating liquor to Knute Dyrdahl, causing Dyrdahl's intoxication; that in such condition he operated his automobile, causing a collision with plaintiff's automobile and personal injuries to plaintiff. Thereafter Revsbech died. Plaintiff's suit is against the executor of Revsbech's estate and the surety company which furnished the bond required by § 340.12 as a prerequisite to obtaining an on sale liquor license. One part of plaintiff's claim is based solely upon § 340.95, the Civil Damage Act. The executor moved for judgment on this asserted cause of action on the ground that it did not survive the dramshop operator. This appeal is from a denial of that motion.

Section 573.01[3] controls the survival of actions in this state. In Lavalle v. Kaupp, 240 Minn. 360, 61 N. W. (2d) 228, 40 A. L. R. (2d) 539, we applied this statute to an action against a deceased defendant to enforce a statutory liability for personal injuries resulting from an attack by defendant's dog.[4] We held that, except for cases of

---

illegally selling, bartering or giving intoxicating liquors, caused the intoxication of such person, for all damages, sustained; * * * and all suits for damages under this section shall be by civil action in any court of this state having jurisdiction thereof."

[2]The appeal is authorized because the trial court certified the question presented as important and doubtful. Shumway v. Nelson, 259 Minn. 319, 107 N. W. (2d) 531.

[3]Minn. St. 573.01 provides: "A cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02. It also dies with the person against whom it exists, except a cause of action arising out of bodily injuries or death caused by the negligence of a decedent survives against his personal representatives. All other causes of action by one against another, whether arising on contract or not, survive to the personal representatives of the former and against those of the latter."

[4]§ 347.22.

death by wrongful act, no cause of action for personal injuries survives the person against whom it exists unless such injuries are caused by decedent's negligence. It is clear that, if an action based solely on § 340.95 is one "arising out of an injury to the person," the Lavalle case controls and plaintiff's action does not survive the dramshop operator. We are constrained to reach that conclusion.

Plaintiff argues, and the court below agreed, that his action is based on contract. Under this theory, liability of the dramshop operator is predicated upon breach of an implied contract between the liquor dealer and the public wherein the dealer, by filing the required bond in exchange for the issuance of a license, promises that he will not make any illegal sales and thereby becomes liable for personal injury resulting from such sales. The executor concedes that if § 340.95 were intended to impose a contractual liability, the action survives. It points out, however, that such liability exists only under the liquor bonding statute, § 340.12,[5] citing Koski v. Pakkala, 121 Minn. 450, 141 N. W. 793; 47 L. R. A. (N. S.) 183.[6] It is to be noted that plaintiff's complaint

---

[5]Section 340.12 provides in part:

"(d) That the licensee, will pay to the extent of the principal amount of such bond or policy, and damages for death or injury caused by or resulting from the violation of any provisions of law relating thereto, and in such cases recovery under this paragraph may be had from the surety on this bond or policy."
Preceding this statement is the language:
"* * * All such bonds shall be conditioned as follows:

*　*　*　*　*

"As to 'off sale' and 'on sale' dealers:

"(a) That the licensee will obey the law relating to such licensed business."
These provisions create contractual liability because the basis for liability (violating the law) is expressly made a part of the actual contract.

[6]Although the bonds furnished by the operators of on and off sale liquor establishments run to the municipality, the court in that case held that private parties wronged could sue as third-party beneficiaries under a statute similar to § 340.12(d). See, also, Lynch v. Brennan, 131 Minn. 136, 154 N. W. 795, L. R. A. 1916E, 269, and Fest v. Olson, 138 Minn. 31, 163 N. W. 798, for actions brought under statutes comparable to § 340.12, referring to the contractual liability thereunder. See Mayes v. Byers, 214 Minn. 54, 7 N.

also alleges a cause of action under § 340.12. The executor concedes that this action is based on contract by application of the third-party beneficiary theory with liability limited to $3,000, the amount of the bond. However, it urges that under the Liquor Control Act an illegal sale of liquor resulting in personal injury gives rise to two possible actions—one against the dealer and the surety on his bond created by § 340.12 and one against the dealer created by § 340.95—both of which may raise the same issues arising out of the same facts.

A failure to regard these two sections as creating separate and distinct causes of action perhaps contributes to the problem of determining the peculiar nature of each. Our previous efforts to ascertain the legislative intent indicate that the purposes of legislation imposing liability on dramshop operators are to protect the public, to penalize the licensed operator for an illegal sale, and to compensate for injury to person or property or means of support.[7] In Mayes v. Byers, 214 Minn. 54, 7 N. W. (2d) 403, 144 A. L. R. 821, we reviewed a suit based on an ordinance corresponding to § 340.12 in which contributory negligence was urged as a defense. We construed the ordinance and this statute as imposing penal liability because we determined that the primary purpose was to enforce a penalty against the liquor dealer for violating an express condition of his statutory bond. The fact that compensation for injuries resulting from a tortious act was made the measure of the penalty was held not to manifest a legislative intent to defeat recovery of the injured party because of his own negligence. We pointed out that there was a distinction between this section and § 340.95 in that the language of the latter did not manifest an intent to impose penal liability. In subsequent decisions the compensatory nature of § 340.95

---

W. (2d) 403, 144 A. L. R. 821, and Philips v. Aretz, 215 Minn, 325, 10 N. W. (2d) 226, for the distinction between §§ 340.95 and 340.12. See Adamson v. Dougherty, 248 Minn. 535, 81 N. W. (2d) 110, and Hartwig v. Loyal Order of Moose, 253 Minn. 347, 91 N. W. (2d) 794, 75 A. L. R. (2d) 459, for a recognition of the confusion of remedies under §§ 340.12 and 340.95.

[7] Hartwig v. Loyal Order of Moose, *supra*; Adamson v. Dougherty, *supra*; Beck v. Groe, 245 Minn. 28, 70 N. W. (2d) 886, 52 A. L. R. (2d) 875; Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; Note, 46 Minn. L. Rev. 169.

was emphasized[8] although there is dictum that alludes to its penal characteristics and indicates that liability thereunder is predicated on contract. It is this dictum in Beck v. Groe, 245 Minn. 28, 36, 70 N. W. (2d) 886, 892, 52 A. L. R. (2d) 875, upon which plaintiff relies. In Adamson v. Dougherty, 248 Minn. 535, 81 N. W. (2d) 110, we were directly confronted with the issue of whether this statute was penal or remedial and held that it was remedial and compensatory in nature.

The implication from our former decisions is that these two sections are not identical in scope. Although their general purpose may be the same, the primary purpose of each is distinct. From the foregoing, § 340.95 must be regarded as creating a distinct cause of action, compensatory in nature; and, in the context of the question presented, its primary purpose is to allow recovery by one injured as a result of a violation of the liquor laws enacted to protect the public. Unlike an action under § 340.12, the action does not arise on contract, for the language used neither expressly nor by implication specifies any contractual terms. Section 340.95 might best be characterized as imposing strict liability essentially analogous to the liability imposed on a dog owner under § 347.22. Such statutes impose liability without regard to fault in the sense of any wrongful intent or negligent conduct.[9] They represent an extension of liability for losses resulting from tortious conduct on the part of those engaged in businesses requiring strict regulation and control in order to insure the welfare and safety of the public.[10] Strict liability is justified on the theory that such business or ac-

---

[8]See, Murphy v. Hennen, 264 Minn. 457, 119 N. W. (2d) 489; Randall v. Village of Excelsior, 258 Minn. 81, 103 N. W. (2d) 131; Ritter v. Village of Appleton, 254 Minn. 30, 93 N. W. (2d) 683; Hartwig v. Loyal Order of Moose, *supra*; Schmidt v. Driscoll Hotel, Inc. 249 Minn. 376, 82 N. W. (2d) 365; Adamson v. Dougherty, *supra*; Strand v. Village of Watson, 245 Minn. 414, 72 N. W. (2d) 609; Hahn v. City of Ortonville, *supra*; Note, 46 Minn. L. Rev. 169.

[9]Hahn v. City of Ortonville, *supra*.

[10]This is a developing area of tort liability by which the traditional common-law concept of no liability without fault is being overthrown. See Prosser, Torts (2 ed.) § 61, for a listing of other areas in which strict liability may be imposed by statute.

tivity can best bear the loss occasioned by a violation of law regulating the business or activity, even though the violation was unintentional or did not involve any deviation from the standard of due care. Statutes imposing strict liability create a cause of action properly and traditionally classified as sounding in tort.[11] We believe such was intended by the enactment of § 340.95.

It is argued that, since an action under § 340.95 for loss of support by the next of kin of a person whose death results from an illegal sale survives the death of the person killed, we should (applying liberal rules of construction to suppress the mischief and advance the remedy) hold that this action also survives. The error of such reasoning is in presuming that an action for loss of support is a survival of one possessed by the person killed. Clearly, it is not. It is a separate and distinct cause of action expressly created by § 340.95.[12]

Since plaintiff's action does not arise out of contract but arises out of the injury to him, strict liability for which is imposed by the statute creating the cause of action, the Lavalle case controls and the action does not survive the dramshop operator.

Reversed.

MURPHY, JUSTICE (dissenting).

It is my view that the cause of action survives under Minn. St. 573.01, because it is one in the nature of negligence. The fact that the Civil Damage Act removes an unwarranted immunity which the defendant enjoyed under the common law and that it imposes strict liability should not compel us to view it as entirely unique or alien in nature. It may be true, as the majority opinion suggests, that it provides a form of social insurance, but it is also true that it finds justification in fundamental negligence principles which recognize that the violation of legal standards imposed by law may create foreseeable hazards which involve unreasonable risk to others. There is so much of the idea of fault, both in the substance of the action and in the procedures for enforcement of liability, that I feel a reasonable interpretation requires that it be con-

---

[11]See, Prosser, Torts (2 ed.) c. 11.

[12]Dictum in Beck v. Groe, 245 Minn. 28, 36, 70 N. W. (2d) 886, 892, 52 A. L. R. (2d) 875.

sidered as one "caused by the negligence of a decedent" within the purview of § 573.01.

For the foregoing reason, I respectfully dissent.

MR. JUSTICE SHERAN, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.