The **ESTATE OF Philip D. BENSON,** **by Michelle S. BENSON, personal** **representative, Appellant,**

v.

**MINNESOTA BOARD OF MEDICAL** **PRACTICE, f/k/a Minnesota Board of** **Medical Examiners, et al., Respondent.**

**No. C1–94–1765.**

Court of Appeals of Minnesota.

Jan. 31, 1995.

consented to the publications, Benson failed to establish a prima facie case of causation or damage, and the action does not survive the decedent's death. The trial court granted judgment holding the action was barred by the survival statute, Minn.Stat. § 573.01 (1992). On appeal from that judgment, Benson argues the trial court erred in applying the relevant law, and abused its discretion in denying her motion to amend the complaint to add a prayer for exemplary damages.

## FACTS

The decedent formerly practiced medicine in Minneapolis. In June of 1990, he noticed skin lesions on his hands, arm, thigh and foot. The lesions produced fluids, bled, and eventually formed scabs. In September of 1990, the decedent tested positive for the presence of human immuno deficiency virus (HIV) antibody, and the infection on his hand was identified as mycobacterium marinum, an AIDS-defining diagnosis. After dermatologic treatment, the decedent experienced no more drainage and his lesions healed by February of 1991.

In September of 1990, the Department received the first report regarding the decedent. In January of 1991, the Department learned the dermatitis on the decedent's hands had been more severe than originally thought, the decedent had failed to follow standard infection control procedures, and the decedent may have posed a risk of HIV infection to his patients. In February, the board imposed restrictions on the decedent's medical practice and asked the Department to conduct an epidemiological investigation of the decedent's practice from May 1990 through March 1991. The decedent complied with all restrictions imposed by the Board.

In May of 1991, the Department's legal counsel met with the decedent and his attorney to tell them about the investigation. The decedent agreed to cooperate and to disclose to his patients his HIV status, his dermatologic status, and aspects of his medical practice and infection control procedures. The

Timothy L. Piepkorn, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., David T. Schultz, Asst. Atty. Gen., St. Paul, for respondent.

Considered and decided by SHORT, P.J., and PETERSON and FOLEY *, JJ.

## OPINION

SHORT, Judge.

As the personal representative of her husband's estate, Michelle S. Benson ("Benson") sued the Minnesota Board of Medical Practice ("Board") and the Minnesota Department of Health ("Department") for publishing articles in violation of her deceased husband's statutory privacy rights. The Board and Department moved for summary judgment on the grounds that the decedent had

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 2.

decedent also agreed to send letters to each of his patients and to conduct consecutive press conferences the day before the letters were sent. After consultation with his attorney, the decedent executed a health data release which authorized:

> the Commissioner of Health, her agents, and attorney to disclose my dermatitis and HIV status and to discuss aspects of my medical practice including medical procedures and/or my patient clientele in an anonymous manner * * * disclose such information as is helpful to identify and to alert persons who may have been placed at risk of disease transmission through my medical practice or to assist in the description of the need for, manner or method, and conclusions of any epidemiologic investigation regarding my medical practice * * * may disclose information set forth in this release to those persons or institutions the Commissioner deems appropriate including the general public. I save and hold harmless the Commissioner of Health, her agents and her attorneys for revealing information * * * consistent with this consent.

The release specifically reserved the decedent's consent from:

> any of my personal medical records or any other protected data not covered by this release. In addition, there shall be no discussion as to how I may have contracted the HIV virus.

In June of 1991, the decedent discussed his HIV and dermatitis status and aspects of his medical practice at a press conference and in a letter to his patients. That conference and the details of the decedent's announcement were covered extensively by the media. The results of the costly epidemiological investigation showed none of the decedent's at-risk patients contracted HIV. The Department reported the investigation's methodology, procedures, and conclusions in an article in the New England Journal of Medicine and an article in the Department's Disease Control Newsletter that appeared in November and December of 1991.

In September of 1992, the decedent died as a result of complications associated with AIDS. Benson sued the Board, Department, and the individuals who had authored the two articles. She claimed the articles violated the decedent's statutory privacy rights, and caused the decedent to suffer emotional and physical devastation, and professional humiliation and ostracism. Prior to the entry of judgment, Benson dismissed the individual defendants.

### ISSUE

Did the trial court err in applying the law to the undisputed facts?

### ANALYSIS

■ Minn.R.Civ.P. 56.03 authorizes summary judgment when no genuine issue exists as to any material fact and where determination of the applicable law will resolve the controversy. See Wartnick v. Moss & Barnett, 490 N.W.2d 108, 112 (Minn.1992) (in reviewing summary judgment, the evidence is viewed in a light most favorable to nonmoving party to determine whether fact issues exist and whether trial court erroneously applied law). All parties agree there are no material facts in dispute and the question before us involves an interpretation of two statutes. Statutory interpretation based on a given set of facts is a question of law, and we need not defer to the ultimate decision of the trial court. Frost–Benco Elec. Ass'n v. Minnesota Pub. Utils. Comm'n, 358 N.W.2d 639, 642 (Minn.1984).

■ Benson seeks damages for violations of the decedent's privacy interests under the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–13.99 (1992). We are asked to decide whether Benson's cause of action survives her husband's death. Minn. Stat. § 573.01 (1992) states "[a] cause of action arising out of an injury to the person dies with the person of the party in whose favor it exists, except as provided in section 573.02." Section 573.02 (1992) allows wrongful death actions and claims for pecuniary losses to a decedent's estate to survive the death of the decedent. See Dahl v. Northwestern Nat'l Bank of Mpls., 265 Minn. 216, 217–18, 121 N.W.2d 321, 322 (1963) (wrongful death actions not barred by survival statute).

Benson argues actions under the Data Practices Act are not necessarily for "personal injury" because the Act allows recovery for property damage, as well as damages for personal injury. *See* Minn.Stat. § 13.08, subd. 1 (allowing actions for "any damage" suffered). But the nature of the injury, not the remedy, determines whether the action survives the victim's death. *Witthuhn v. Durbahn*, 279 Minn. 437, 440, 157 N.W.2d 360, 362 (1968); *see Webber v. St. Paul City Ry.*, 97 F. 140, 145 (8th Cir.1899) (test of survival is not the form, but the substance, of the cause of action). That the cause of action is a creature of statute does not change its nature or remove it from the survival statute. *See, e.g., Dahl*, 265 Minn. at 217–18, 121 N.W.2d at 322.

Benson is suing for injury to the decedent's statutory privacy interests. The alleged wrongful publications occurred in November and December of 1991, while the decedent was still alive. The alleged violations are thus personal to the decedent, not violations of the estate's property interests under the statute. *See* Minn.Stat. §§ 13.04 (rights of individuals), 13.05 (duties owed to individuals), 13.08 (agency liable to persons), 13.10 (data on decedents).

Our conclusion that an invasion of decedent's statutory privacy rights constitutes a personal injury is supported by general tort principles and foreign case law. Although Minnesota does not recognize an independent tort for invasion of privacy, such a tort is a cause of action for personal injury. *See* Restatement (Second) of Torts § 652I (privacy right is purely personal); *Hendry v. Conner*, 303 Minn. 317, 319, 226 N.W.2d 921, 923 (1975) (Minnesota has never recognized an action for invasion of privacy); *Markgraf v. Douglas Corp.*, 468 N.W.2d 80, 84 (Minn. App.1991) (same). In addition, foreign jurisdictions hold an action for invasion of privacy, whether statutory or common law, is personal and abates upon the death of the person whose privacy is invaded. *See, e.g., Pirone v. MacMillan, Inc.*, 894 F.2d 579, 585 (2d Cir.1990); *Ravellette v. Smith*, 300 F.2d 854, 857–58 (7th Cir.1962); *Shapiro v. Smith*, 652 F.Supp. 218 (S.D.Ohio 1986); *Reeves v. United Artists*, 572 F.Supp. 1231, 1234 (N.D.Ohio 1983); *Maritote v. Desilu Prod., Inc.*, 230 F.Supp. 721, 724–25 (N.D.Ill.1964); *Hendrickson v. California Newspapers, Inc.*, 48 Cal.App.3d 59, 121 Cal.Rptr. 429, 431 (1975); *Swickard v. Wayne County Medical Examiner*, 438 Mich. 536, 475 N.W.2d 304, 311 (1991); *McLean v. Rogers*, 100 Mich. App. 734, 300 N.W.2d 389, 391 (1980); *In re Brown*, 478 So.2d 1033, 1041 (Miss.1985); *Smith v. Long Island Jewish–Hillside Medical Ctr.*, 118 A.D.2d 553, 499 N.Y.S.2d 167, 168 (1986); *Moore v. Charles B. Pierce Film Enters., Inc.*, 589 S.W.2d 489, 491 (Tex.Civ. App.1979); *Fretz v. Anderson*, 5 Utah 2d 290, 300 P.2d 642, 646 (1956); *Strickland v. Deaconess Hosp.*, 47 Wash.App. 262, 735 P.2d 74, 76 (1987), *pet. for rev. denied* (Wash. July 1, 1987).

The nature of the damages sought by Benson, while not determinative, also demonstrates the personal nature of the injury alleged. Benson claims damages for the decedent's emotional and physical devastation, and professional humiliation and ostracism. Lawsuits for emotional distress are disfavored even where the plaintiff is alive. *See Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438 (Minn.1983) (claims for mental anguish are speculative and likely to lead to fictitious allegations); *Eklund v. Vincent Brass & Aluminum Co.*, 351 N.W.2d 371, 379 (Minn.App.1984) (tort claims seeking damages for intentional infliction of emotional distress are disfavored); *Restatement (Second) of Torts § 436A cmt. b (1965)*; see generally Michael K. Steenson, *The Anatomy of Emotional Distress Claims in Minnesota*, 19 Wm. Mitchell L.Rev. 1 (1993) (discussing history of emotional distress law and standards for recovery). Because the alleged injuries are so personal, a jury would have to guess on the extent and nature of the decedent's emotional devastation, humiliation and ostracism without his presence and testimony at trial. *See Moore*, 589 S.W.2d at 491 (law is rightfully wary of claims for injuries which are purely emotional and where the difficulty of judging the validity of complaints which are essentially subjective makes the damages of spurious actions substantial).

Benson insists all causes of action survive the death of either party, except those aris-

ing out of the death of an injured plaintiff. *See Thompson v. Estate of Petroff,* 319 N.W.2d 400 (Minn.1982) (holding the survival statute partially unconstitutional). *Thompson* dicta, however, does not support Benson's claim. *Thompson* permits recovery where a tortfeasor dies because there is "no reason why the fortuitous death of a tortfeasor should deprive any injured victim \* \* \* of an opportunity to obtain compensation." *Id.* at 407. The victim here died, not the tortfeasor. *Thompson* did not alter Minn. Stat. § 573.02, which limits recovery to special damages in cases where the plaintiff dies of causes unrelated to the injury. Because Benson alleged no special damages, her cause of action is barred by the survival statute.

Our resolution of this issue obviates the necessity to address: (1) whether the trial court abused its discretion by denying Benson's motion to amend to add punitive damages; (2) whether the decedent consented to the two publications; and (3) whether the articles published information not already in the public domain. In addition, the reply brief of the Board and Department is immaterial to the determinative issue on appeal. We thus do not accept, and this opinion does not rely, on the material contained in that brief.

## DECISION

■ Benson's claim for invasion of the decedent's statutory privacy interests is an action for personal injury which does not survive decedent's death. The trial court properly granted summary judgment in favor of the Department and Board.

**Affirmed.**